[Civ. No. 2278.   Third Appellate District.—June 28, 1921.]

## W. F. BURNS, Appellant, v. GEORGE H. JACKSON, Respondent.

[1] EVIDENCE—OPINION OF WITNESS—WEIGHT OF AS AGAINST FACTS. The statement of a mere opinion or conclusion by a witness in his direct examination can have no weight as against facts stated by him in his cross-examination which are necessarily opposed to such opinion.

[2] ID.—CONFLICT BETWEEN DIRECT AND CROSS EXAMINATION—INFERENCES—NONSUIT.—An irreconcilable conflict between the direct examination and the cross-examination of a witness is not of itself sufficient to justify a nonsuit; but on such motion the evidence must be taken most strongly against the defendant, and if an inference could reasonably arise therefrom in favor of plaintiff's contention, the motion must be denied.

[3] APPEAL—LAW OF CASE—NEW TRIAL.—Where the appellate court has in its opinion stated a rule or principle of law necessary to a decision, that rule or principle must be adhered to and observed throughout the subsequent progress of the case, both in the lower court and upon subsequent appeal, although it may be believed upon further consideration that the former decision in that particular is erroneous.

[4] ID.—NEW TRIAL—EFFECT OF ADDITIONAL FAVORABLE EVIDENCE.— Where in a decision by the appellate court it is held that the evidence against the defendant was sufficient to be submitted to the jury and the judgment is reversed, upon the new trial, if substantially the same evidence is introduced against the defendant, the decision by the appellate court is controlling, notwithstanding additional evidence is received that might be favorable to said defendant.

[5] EMPLOYER AND EMPLOYEE—SPECIAL EMPLOYMENT—LIABILITY FOR NEGLIGENCE.—A person may be in the general employment of one and in the special employment of another, so as to make the latter responsible for the negligence of such employee.

[6] PLEADING—ADMITTED FACTS—PROOF.—When a fact is admitted by the pleadings it is not necessary to prove it.

APPEAL from a judgment of the Superior Court of Sutter County.   K. S. Mahon, Judge.   Reversed.

The facts are stated in the opinion of the court.

Martin I. Welsh, V. Z. Hatfield and W. H. Hatfield for Appellant.

W. H. Carlin and A. H. Hewitt for Respondent.

BURNETT, J.—The appeal is from a judgment of nonsuit. The action was brought originally against five defendants: The Southern Pacific Company, George H. Jackson, Jackson M. Diggs, W. G. McRoberts, and F. G. Prinderville, but on the first trial a nonsuit was granted as to Diggs, Jackson, and McRoberts, the jury exonerated the Southern Pacific Company, and rendered a verdict against Prinderville for the sum of two thousand dollars. An appeal was taken from said judgment of nonsuit and it was affirmed by this court as to Diggs and McRoberts but was reversed as to the defendant, George H. Jackson. (*Burns* v. *Southern Pac. Co.,* 43 Cal. App. 667, [185 Pac. 875].)

In that decision it was said: "Without setting forth the evidence in detail, it is necessary to say that there was sufficient evidence to take the case to the jury as to the defendant Prinderville being an employee of the defendant Jackson, and also as to the negligence of the defendant Prinderville in the operation and management of the auto-truck at the time of the collision."

The motion for nonsuit at the second trial was based upon the contention of an entire lack of evidence that Prinderville was in the employment of Jackson at the time of the accident, which resulted in the death of plaintiff's son. The view of the trial court was that a difference existed in that respect between the first and the second trial, Prinderville having testified at the former that "he was working for Dr. Jackson, was operating the truck under his control," while the court proceeded to state: "The testimony is to-day he was working for Diggs and under his control." The court continued: "It wasn't brought out on cross-examination that he was under the pay and employ and control of Diggs; here you have two witnesses, Prinderville states it and so does McRoberts." In reply to the suggestion of appellant that "all the intendments are in favor of the plaintiff's side of the case in a motion for nonsuit," the court said: "When a man says in his testimony, 'I was work-

ing for Dr. Jackson,' and on cross-examination the facts come
out he was working for Tom Smith, you can't take his testi-
mony on direct examination as an inference or as a pre-
sumption or as amounting to anything.'' [1] No doubt
the learned trial judge was right in the last-quoted asser-
tion, if he meant that the statement of a mere opinion or
conclusion by a witness in his direct examination could
have no weight as against facts stated by him in his cross-
examination which are necessarily opposed to such opinion.
[2] However, an irreconcilable conflict between the direct
and the cross examination of a witness is not of itself suffi-
cient to justify a nonsuit. The rule upon the subject has
been well settled and is fully discussed by this court in
the *Estate of Daley,* 15 Cal. App. 329, [114 Pac. 787]. It
is sufficient to say that on such motion the evidence must be
taken most strongly against the defendant, and if an in-
ference could reasonably arise therefrom in favor of plain-
tiff's contention, the motion must be denied. But a con-
sideration of the question of fact involved in said proposition
may be deferred until after an inquiry as to the conten-
tion of appellant that the trial court, by virtue of the
''law of the case,'' was under legal compulsion to deny the
motion for nonsuit.

[3] The doctrine is well understood, and the parties
herein are in accord that where the appellate court has in
its opinion stated a rule or principle of law necessary to a
decision, that rule or principle must be adhered to and ob-
served throughout the subsequent progress of the case, both
in the lower court and upon subsequent appeal, although
it may be believed upon further consideration that the
former decision in that particular is erroneous. (*Wester-
field* v. *New York L. Ins. Co.,* 157 Cal. 339, [107 Pac.
699].) [4] By the former decision herein it was held that
the evidence against respondent was sufficient to be sub-
mitted to the jury. If substantially the same evidence
appears in this record, said decision, of course, is control-
ling. It would make no difference if additional evidence
was received that might be favorable to respondent. The
test is, Was substantially the same evidence favorable to
appellant received at the second as at the first trial? As
to this, it may be said, that respondent has not pointed out
any difference and we would be justified in concluding from

his omission that no difference exists. It is true that he quotes quite freely from the testimony at each trial, but he does not specify the variance upon which he relies. However, we have examined the testimony of the two witnesses, Prinderville and McRoberts, claimed by appellant to be sufficient to show *prima facie* that the former at the time of the accident was under the exclusive control and direction of Dr. Jackson, and we find no such divergence as to make inapplicable the "law of the case."

At the first trial Prinderville testified: "On the twenty-seventh day of June, 1917, I was employed by Jackson as a driver of his truck. We were hauling empty lug boxes at the time of the accident. We were engaged in hauling fruit from Dr. Jackson's ranch to Oswald Station, and hauling empties back. *I was acting under the direction of Dr. George H. Jackson that day.* Defendant McRoberts was superintending the hauling of the fruit. . . . I received pay for my work performed for that week from Jackson Diggs. He paid me for all of the week. I did not receive any money from Mr. McRoberts or Dr. Jackson."

On the second trial his testimony upon this point appeared as follows: "Q. What business were you engaged in on the twenty-seventh day of June, 1917? A. Driving a truck. Q. For whom were you driving the truck? A. Jackson Diggs. . . . What did you do in the afternoon? A. Went out to the orchard, got a load of apricots, took them to Oswald and put them in a car. Q. Who sent you to get the fruit in the orchard? A. Mr. McRoberts. Q. In what orchard was it you got the fruit? A. You mean who owned it? Q. Yes, sir. A. Dr. Jackson, I believe. Q. What did Mr. McRoberts direct you to do? A. Go to the orchard and get a load of the fruit that were there boxed. Q. Whom were you working for that afternoon? A. *I presume I was working under Dr. Jackson. Q. You were subject to his orders that* afternoon? A. Yes, sir. . . . Q. You were paid for this work by Jackson Diggs, of course. A. Yes, sir. Q. And not paid anything at all by Dr. Jackson? A. No, sir."

At the former hearing McRoberts testified: "I am a fruit-grower and superintendent for defendant Dr. Jackson. That was my business on the twenty-seventh day of June, 1917. I was acquainted with Emmans Franklin Burns in

his lifetime. He was working for Dr. Jackson and I was superintending the work."

At this trial he testified to the same thing but added that Mr. Prinderville hauled some fruit for Dr. Jackson that day and that he probably told Mr. Prinderville that "we had a load of fruit to take down to Oswald." He also related what occurred after they left the Jackson place, but this is of no consequence. It is true that in the cross-examination he testified that Mr. Prinderville was in the "employ of Jackson Diggs" and that he had full control of the truck "right to stop it, or go ahead or back up as he pleased," but, as we understand, it was never contended by appellant that Prinderville was not in the general employ of Diggs or that the chauffeur was not permitted to use his own judgment as to the manipulation and operation of the machine.

[5] As we read the record, there was substantial evidence at the former trial in support of the theory that while Prinderville was in the general employ of Diggs, yet at the time of the accident he was in the service of respondent for a special purpose and subject to the exclusive control and direction of the latter in the accomplishment of that purpose, that it was so held in the former decision, that substantially the same evidence tending to prove that condition was received at this trial; and we conclude that the "law of the case" was properly invoked by appellant.

What we have said sufficiently expresses our view, also, that regardless of the former decision, it would be a fair inference from the showing made at the last trial that the relation of employer and employee as to this particular service existed between Prinderville and Dr. Jackson. It is indeed a very reasonable conclusion that Mr. Diggs, a son-in-law of Dr. Jackson, loaned or hired to the latter the truck and also its driver for this particular work and thereby made Prinderville subject to the control and direction of respondent. That a person may be in the general employment of one and in the special employment of another so as to make the latter responsible for the negligence of the employee is a proposition that cannot be disputed. In 20 Am. & Eng. Ency. of Law, 178 (second edition), it is said: "The doctrine *respondeat superior* applies only when the relation of master and servant is shown to exist between the

wrongdoer and the person sought to be charged with the result of some neglect or wrong, at the time of and in respect to the very transaction out of which the injury arose; hence the fact that the party to whose wrongful or negligent act the injury may be traced was at the time in the general employment and pay of another person, does not necessarily make the latter the master so far as that particular act is concerned, and responsible therefor. It is accordingly well settled that one who is the general servant of another may be loaned or hired by the master for some special service so as to become as to that service the servant of such third party; and where a general servant is so loaned or hired to another, and as regards the particular service for which he is so loaned or hired is subject wholly to the direction and control of that other, the latter, and not the general employer, is the master so far as the particular service is concerned and liable for injuries caused by the negligence and wrongful act of the servant while engaged in the duties pertaining to such service.'' Indeed, this view as to the special service of Prinderville seems quite recently to have been entertained by the learned counsel for respondent. In their reply on behalf of Diggs and Mc-Roberts to a petition of plaintiff in the supreme court for a hearing after said decision in this court, they declared: ''The fact is, however, that Diggs and Jackson were operating neighboring ranches and they did what farmers very frequently do, that is, they swapped work occasionally, one would send over and get the teams and wagons and outfit of the other and when he finished using them would send them back, the owner of the outfit having nothing to do with, nor in fact knowing anything at all about where his outfit was during the time it was away.'' Of course, it is not surprising that counsel in representing Diggs should seek to shift to Jackson the responsibility for the accident, nor are they to be censured for changing their view of the situation when they represent the latter, but it is quite fair to assume that they would not have taken their original position without reasonable ground for it, or at least believing such ground existed.

[6] Moreover, when a fact is admitted by the pleadings it is, of course, not necessary to prove it. Plaintiff in his verified complaint alleged: ''That defendant Jackson is the

grandfather of the defendant Jackson M. Diggs, and they work together and exchange utilities with each other, and were so co-operating at said date in the use of said auto-truck.'' The defendant, Jackson expressly admitted that he was the grandfather of Diggs, and did not deny the other part of the allegation. Therein was set forth the basic fact of the liability of respondent for the negligence of Prinderville, and it obviated the necessity for evidence to that extent.

Again, respondent in his answer declares as follows: ''De-fendant admits that on the twenty-seventh day of June, 1917, certain fruit, to wit: Apricots were being hauled from the farm of this defendant to Oswald Station, on the line of the defendant Southern Pacific Company, in said Sutter County, in an autotruck owned by Jackson Diggs, and that such fruit was being transported by this defendant from his said farm to said station along and over a public highway of said Sutter County, but he denies that said autotruck was on said date operated by the defendant, Jackson M. Diggs.'' The foregoing is virtually an admission that he, and not Mr. Diggs, was in control of the autotruck on that day. At any rate, it is plain from the evidence that it was operated either by him or by Diggs, and his denial that it was operated by the latter together with his averment that ''such fruit was being *transported* by this defendant'' should have some weight in the determination of the question whether there was a case for the jury on this vital point.

We feel satisfied that the court was in error in granting the motion, and the judgment is reversed.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1921.

All the Justices concurred, except Angellotti, C. J., who was absent.