[Civ. No. 2523.    Third Appellate District.—November 16, 1922.]

# W. F. BURNS, Respondent, v. GEORGE H. JACKSON, Appellant.

[1] NEGLIGENCE—COLLISION BETWEEN MOTOR-CAR AND AUTOTRUCK—STATUS OF OPERATOR — LIABILITY FOR INJURIES — EVIDENCE—VERDICT.—In this action for damages for the death of a minor son, who was killed in a collision between a railway motor passenger car and an autotruck claimed to have been in the special service and under the control of defendant, the driver of the autotruck, upon two successive trials, having testified to certain facts, and the appellate court, in reversing the judgment of nonsuit each time in favor of defendant, having held that such facts were sufficient to demand a submission to the jury of the question of the liability of defendant, and upon the third trial such witness having testified to substantially the same facts as at the previous trials, that evidence was sufficient to support the verdict in favor of plaintiff, notwithstanding at the former trials such witness was of the opinion that he was in the employ of defendant, whereas at the latter trial, for some reason or other, he was of the opinion that a third person was his employer and that he was responsible to him.

[2] MASTER AND SERVANT—TEST OF LIABILITY FOR ACTS OF EMPLOYEE. The fact that the general employer, and not the special employer, pays the wages of the employee is not controlling in determining the question of responsibility for injuries caused by the latter, the test being whether the act is done in the business of which the person is in control as a proprietor, so that he can at any time stop or continue it and ' determine the way in which it shall be done not merely in reference to the result to be reached, but in reference to the method of reaching the result.

[3] NEGLIGENCE—DEATH OF BOY—EXCESSIVE DAMAGES—EVIDENCE.— The deceased, a boy sixteen years of age, having just completed his first year in high school, and the evidence having shown that he was a strong, healthy, industrious and obedient lad and a great help and comfort to his parents, who were both cripples, and his father's expectancy of life having been 15.39 years, the appellate court could not say that the verdict of $5,250 in favor of plaintiff, the father, was excessive.

[4] ID.—CONFLICTING TESTIMONY AT SUCCESSIVE TRIALS—SURPRISE—IMPEACHMENT.—The driver of the motor-truck, who had been called as a witness for plaintiff, having declared on cross-examina-

3.   Excessiveness of damages for personal injuries resulting in death, notes, 18 Ann. Cas. 1209; Ann. Cas. 1915C, 449; L. R. A. 1916C, 820.

tion that he was the servant of the owner of the truck and was not in the employ of defendant and that the latter had no control over him, the trial court did not commit error in permitting plaintiff on redirect examination to question such witness as to his testimony at the former trials wherein he had declared that he was working for, and subject to the orders of, defendant.

[5] ID. — LIABILITY OF SPECIAL EMPLOYER — INSTRUCTION. — In such action the court properly instructed the jury "that it is the law, that one who is the general servant or employee of another may be loaned or hired by the master for some special service, so as to become as to that special service the servant of such third party; and where a general servant is so loaned or hired to another, and as regards the particular service, for which he is so loaned or hired, is subject wholly to the direction and control of the other, the latter, and not the general employer, is the master, so far as the particular or special service is concerned, and is liable for injuries caused by the negligent and wrongful act of the servant, while engaged in the duties pertaining to such service."

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin and A. H. Hewitt for Appellant.

Martin I. Welsh, V. L. Hatfield, and W. H. Hatfield for Respondent.

BURNETT, J.—The action was for damages for the death of a minor son, and plaintiff was awarded by a jury the sum of $5,250, and judgment was thereupon entered in his favor for that amount. The son was killed in a collision between a Southern Pacific motor passenger car and an autotruck owned by one Jackson Diggs, one of the original defendants herein, operated by one F. G. Prinderville. also a former defendant, who, it is claimed by respondent, was in the special service and under the control of appellant Jackson through his superintendent, W. G. McRoberts, at the time of the collision.

The cause has been before this court on two former occasions. In *Burns* v. *Southern Pacific Company et al.,* 43 Cal. App. 667 [185 Pac. 875], the facts are quite. fully stated, and therein it was said:

"The fact that Diggs was the owner of the truck, and that the defendant Prinderville was in his general employ as a chauffeur, appears to be the only cause for having joined him in this action, but, as the testimony shows without contradiction that at the time of the collision referred to both truck and chauffeur were under the control and management of the defendant Jackson, the correctness of the ruling of the court as to the defendant Diggs requires no further mention."

Furthermore, it was said:

"Without setting forth the evidence in detail, it is only necessary to say there was sufficient evidence·to take the case to the jury as to the defendant Prinderville being an employee of the defendant Jackson, and also as to the negligence of the defendant Prinderville in his operation and management of the autotruck at the time of the collision."

This court, therefore, ordered the judgment of nonsuit in favor of the defendants Diggs and McRoberts rendered in the trial court to be affirmed and the judgment of nonsuit in favor of defendant Jackson to be reversed, and the cause remanded for a new trial as to him. It may be added that upon the first trial a verdict was rendered in favor of plaintiff against Prinderville and for defendant company for its costs, and there was no appeal as to either of these defendants.

The case went back for a new trial as to Jackson and again a judgment of nonsuit was rendered in his favor. An appeal was taken and the judgment reversed, as reported in *Burns* v. *Jackson,* 53 Cal. App. 345 [200 Pac. 80]. Therein it was held that substantially the same evidence as to the liability of defendant Jackson appeared at the second as at the first trial and, therefore, the principle of the "law of the case" was applicable. In the opinion is set out the testimony of the two witnesses, Prinderville and McRoberts, at both trials, which it is not necessary to repeat. [1] This appeal is by the defendant Jackson from the judgment rendered against him after the third trial, and the main contention of appellant is that the verdict is entirely unsupported, since the evidence shows without conflict that Prinderville was in the employ and under the direction and control of Diggs, and, hence, Jackson was in nowise responsible for the negligence of the driver of said auto-

truck at the time of the collision. Preliminarily, it may be
stated that the conclusion as to the liability of Jackson at
all the trials rested wholly upon the testimony of Prinder-
ville and McRoberts, that a petition for a rehearing was
denied by the supreme court after said decisions were ren-
dered by this court and appellant's counsel, who represented
Diggs in the opposition to the petition of the plaintiff in
the supreme court for a hearing after said first decision of
this court holding that the nonsuit as to him was properly
granted, contended that there was no evidence that Prinder-
ville was under the control and direction of Diggs and,
therefore, the latter could not be held responsible for the
former's negligence. In other words, while representing
Diggs alone, they earnestly sought to make it appear that
Jackson was the responsible employer, but herein, while
representing Jackson alone, they are equally insistent that
the liability belongs to Diggs. It is due counsel, though, to
say that they claim the evidence at the last trial to be
different from the first, in that the testimony of Prinderville
was not the same. To support this position attention is
called to the fact that at the last trial he testified that he
had full control of the truck, that he had full power to
stop and to start it when he pleased, that nobody had any
control over him in doing that work, that he was then the
employee of Jackson Diggs, and that neither Dr. Jackson
nor Mr. McRoberts directed him in any particular as to
how he should run the truck, whereas at the first and second
trials he testified that he was working for Dr. Jackson,
subject entirely to his orders, to go with his truck and
drive it wherever he was directed and without anything
being said by Diggs at all. Hence, it is concluded that the
principle of "the law of the case" is inapplicable since it
presupposes that the facts are substantially the same and
has no application where the facts alleged and found are
materially different from those considered on a former ap-
peal. (*Esrey* v. *Southern Pac. Co.,* 103 Cal. 541 [37 Pac.
500] ; *Moore* v. *Pratt,* 162 Cal. 268 [122 Pac. 462] ; *Kramm*
v. *Stockton Electric R. Co.,* 10 Cal. App. 271 [101 Pac.
914].)

But it is to be observed that Prinderville admitted that
at the first trial he testified that he was working for Dr.
George H. Jackson that day, and subject entirely to his

orders, to go with the truck and drive it wherever he directed him without anything being said by Jackson Diggs at all. In explanation of the apparent discrepancy he made the following reply to the questions asked by counsel for appellant as follows: "Q. Well now, Mr. Prinderville, in this testimony here, as I understand, on the 27th day of June, 1917, while you were in the employ of Jackson Diggs on that day, you were working for Dr. Jackson. You mean by that you were hauling Dr. Jackson's fruit? A. Yes sir. Q. As you said today? A. Yes sir. Q. (Reading): 'And subject to his orders entirely?' That is, that you were hauling fruit he told you to haul? A. Yes sir, hauling fruit he told me to haul and when he told me to haul it. Q. (Reading); 'And to go with your truck and drive it wherever he directed you to?' A. Yes sir. Q. That is true, wasn't it? A. Yes sir. Q. (Reading): 'And without anything being said by Jackson Diggs at all?' A. Yes sir. Q. That is true, and that is what you say today? A. Yes sir. Q. You still say, do you, that so far as the management of the truck was concerned, you controlled that absolutely yourself, drove it as you pleased, stopped it when you pleased, controlled absolutely without anything being said by Dr. Jackson or any of his employees? A. Yes sir."

We can see no substantial difference in the facts to which the witness testified at the various trials, the only difference being in the inference or opinion of the witness as to who was his employer. His opinion at the first two trials was that he was in the employ of Dr. Jackson, while at the last trial, for some reason or other, his judgment was that Mr. Diggs was his employer and that he was responsible to him. This consideration was, however, for the determination of the jury and not to be influenced by the opinion of the witness. Upon what ground he based his conclusion is not disclosed, but when it comes to the recital of the facts from which the jury was to conclude whether in this particular employment he was subject to the direction and control of Dr. Jackson or Mr. Diggs, in justice to the witness, it must be said that his testimony throughout is consistent. These facts in brief are that for a month or six weeks he had been in the general employ of Mr. Diggs as chauffeur, that during all this time he had been living at the Jackson place, that Mr. Diggs was operating a ranch

across the road and on the morning in question Mr. Diggs
sent him over to Dr. Jackson's without giving him any di-
rections as to what he should do, that he hauled fruit that
day from Dr. Jackson's ranch to Oswald, that after dinner,
Mr. McRoberts, the foreman for Dr. Jackson, told him to
take a load of fruit to Oswald, to go out in the orchard
and get the fruit, that Mr. McRoberts and young Burns
rode with him and assisted him in unloading the fruit,
that, after unloading the fruit, he went to a place named
Kecks and got a load of empty boxes, that he had nothing
to do with the loading but that it was attended to by Mr.
Burns and McRoberts, that he went to Kecks by direction
of Mr. McRoberts, that he was hauling Dr. Jackson's fruit
"he told me to haul and where he told me to haul it and
to go with my truck and drive it wherever he directed me
to and without anything being said by Jackson Diggs at
all." The foregoing appear as the material facts in all
these trials from which the inference was to be drawn as to
who had the direction and control of Prinderville, and if
they were sufficient as a matter of law in the first and sec-
ond trials to demand the submission to the jury of the ques-
tion of the liability of Jackson, they are sufficient upon
this appeal after verdict in favor of plaintiff, regardless
of the technical rule of "the law of the case" to compel a
decision that the verdict is legally supported. In this con-
nection it is to be remembered that neither Jackson nor
Diggs testified in the case. They were in a position to shed
more light upon the disputed point than anyone else and
their silence under the circumstances must have been deemed
by the jury as a circumstance of some significance. They
undoubtedly had some agreement as to the services of Prin-
derville as it is unreasonable to suppose the contrary.
While neither, of course, was required to testify, they at
least had direct and personal knowledge of the relation of
the parties and their failure to speak could hardly fail
to weigh against the appellant. It is true, also, that the
jury were at liberty to accept a portion of Prinderville's
testimony if it carried conviction to their minds, and reject
any other portion that they may have disbelieved. Indeed,
they must have observed his inclination to favor *Jackson* in
the last trial as he manifestly desired to help *Diggs* in the
other trials. This apparent bias could not be laid out of

view in properly appraising his testimony. As to Prinder-
ville's statement that no one directed him when to stop and
when to start the machine, etc., it can have no bearing upon
the question before us. There is no pretense that he was
an independent contractor, but it appears beyond peradven-
ture that he was an employee of either Diggs or Jackson,
and it would be absurd to suppose that the employer would
give him such minute directions as to the operation of the
truck. Such matters would naturally be left to the judg-
ment of the driver, who was better qualified and in a better
position than the employer to exercise such judgment.

As to the principle of law involved in the question of the
relation of the parties there is no controversy, the only
difficulty being in its application to the facts. The books
are replete with illustrative cases, but it is sufficient to refer
to a few from the recent decisions of our supreme court.

In *Stewart* v. *California Imp. Co.*, 131 Cal. 125 [52
L. R. A. 205, 63 Pac. 177], the injury was caused by es-
caping steam from an engine operated by one Conger, who
was employed by the California Imp. Company to roll and
level certain streets in the city of Oakland. The main
contention of appellant therein was that the injury to the
plaintiff was not caused by its negligence but that of the
city of Oakland, since it was being used under the direction
of the city superintendent of streets. The supreme court,
however, said that the trial court had found that the de-
fendant company had selected the engineer, and his services
were to be paid by said company, and said company had
the right to remove him and that the relation of master and
servant existed between them and not between the city and
Conger. The supreme court held that the evidence sup-
ported these findings and quoted with approval from the
leading case of *Boswell* v. *Laird*, 8 Cal. 469, the following
statement of the rule in such cases: "The relation between
parties to which responsibility attaches to one for the acts
or negligence of the other must be that of superior and sub-
ordinate, or, as it is generally expressed, of master and
servant in which the latter is subject to the control of the
former. The responsibility is placed where the power ex-
ists." **[2]** Therein the services were paid for by the party
whom the court held to be liable, while in the case at bar
the evidence shows that Diggs, and not Jackson, paid Prin-

derville, but such circumstance is not controlling, the test being whether "the act is done in the business of which the person is in control as a proprietor, so that he can at any time stop or continue it and determine the way in which it shall be done not merely in reference to the result to be reached, but in reference to the method of reaching the result." (18 R. C. L., sec. 244; *Burns* v. *Jackson, supra.*)

In *Pruitt* v. *Industrial Acc. Com.,* 189 Cal. 459 [209 Pac. 31], it was held that the owner of a truck was not liable for the death of the driver caused by injuries received by said driver while hauling materials for a contracting firm, "where such firm hired the truck from the owner including the services of the driver, and controlled and directed the driver in the operation and movement of the truck, and said owner never exerted any measure of control over the truck or driver while in the service of said firm," the court being of the opinion that the hirer of the truck was the responsible party.

In *Billig* v. *Southern Pacific Co.,* 189 Cal. 476 [209 Pac. 241], is found the last expression of the supreme court on the subject. Therein the governing principle is stated as follows: "The application of the doctrine *respondeat superior* in any given case depends upon the power of control which the superior possesses, and which for the protection of third persons he is required to exercise, over the conduct and activities of his subordinates, and consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate." It was held therein that the trial court was justified in holding that the special employer had no such power of control, but the general employer did have and that the latter was therefore liable. In the opinion denying a rehearing (209 Pac. 245) the supreme court shows that there is no conflict between that case and *Pruitt* v. *Industrial Acc. Com., supra,* there being a difference in the evidence, and the court being of the opinion that there was no evidence, either direct or otherwise, "from which it might be inferred that Horns (the general employer) at the time and place of the collision and with respect to the manner and method of operating and controlling the auto truck while in transit, had

relinquished to another person his right of control over the driver of the truck." Herein, as we have seen, there is no direct evidence of the extent of the authority of the special employer, but it is a fair inference from all the circumstances in the case that it depended upon Dr. Jackson's volition whether Mr. Prinderville should be retained in that particular work, and that the special employer had control over the employee while engaged in that work.

[3] The contention that the verdict is excessive, in our judgment, possesses no merit. The rule is, of course, that the verdict will not be disturbed upon this ground unless it is "so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury." (*Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83].) The boy was sixteen years of age, had just completed his first year in the Marysville High school, and the evidence shows he was a strong, healthy, industrious and obedient lad and a great help and comfort to his parents, who were both cripples. The father's expectancy of life was 15.39 years, and applying the principles that must govern in such instances, as enunciated in the cases cited by appellant, we cannot say that the verdict should be condemned. (*Peluso* v. *City Taxi Co.*, 41 Cal. App. 297 [182 Pac. 808]; *Bond* v. *United Railroads*, 159 Cal. 270 [Ann. Cas. 1912C, 50, 40 L. R. A. (N. S.) 687, 113 Pac. 366].) It is, of course, true, as stated by appellant, that no "hard and fast guide" can be applied to all cases, but that the jury is permitted to exercise an intelligent discretion in view of the peculiar facts of the case, keeping in mind the well-established principles of law as to actual compensation for the loss sustained.

[4] It is claimed by appellant that the court committed error in overruling the objection to questions asked of Prinderville on the redirect examination by respondent as to said Prinderville's testimony at the first trial of the cause. Upon cross-examination, it seems, he declared that he was the servant of Jackson Diggs and was not in the employ of Dr. Jackson and that the latter had no control over him. The questions as to his testimony at the former trial we may combine into one as follows: "As I understand, in that day, the 27th day of June, 1917, while you were in the employ of Jackson Diggs on that day, you were working

for George H. Jackson, and subject to his orders entirely, to go with your truck and drive it wherever he directed you and without anything being said by Jackson Diggs at all?'' He admitted that his answer was ''yes,'' and in reply to further questions by appellant he stated what we have hereinbefore set out. Appellant admits that the questions as to the former trial would have been proper on the ground of surprise if the witness had testified on the direct as he had on the cross-examination, but we can see no difference in principle, since he was a witness for plaintiff and the particular statement could be no less *surprising* because elicited by appellant rather than by respondent. Section 2049 of the Code of Civil Procedure permits a party producing a witness to show that the witness ''has made at other *times* statements inconsistent with his present testimony,'' provided the attention of the witness is called to such statements as provided in section 2052 of said code. The reason for the rule is clearly stated in the opinion of this court in *Zipperlen* v. *Southern Pacific Co.*, 7 Cal. App. 206 [93 Pac. 1049], to the effect that ''a party producing a witness virtually stands as an indorser of the character of such witness, and by the act of calling him to testify in his behalf in effect declares to the court and jury that the testimony of said witness will strengthen and support his contention'' and it would be unjust to allow the witness to place the party ''in a false light before the court or jury.'' More·over, said questions propounded to the witness on cross-examination involved his opinion of the relation he sustained to the other parties and to that extent he was really made the witness of appellant and it was proper to permit the respondent under such circumstances to call his attention to an adverse opinion that he had formerly expressed. In this connection appellant claims that he requested the court to limit this testimony to the consideration of the credibility of the witness and that it should not be regarded as proof of the fact, but our attention is not directed to any portion of the record showing such request. All that we have found concerning it is the following statement made by counsel for appellant during the argument as to the admissibility of said testimony at the first trial: ''Now, I repeat, had they asked the witness a question and then obtained an answer which surprised them, under the law as

laid down in the code and sustained by the authorities, they would have had the right to ask him if he made another answer at another time; and then we would have been entitled from your Honor to an instruction to the jury that they were permitted to do that only for the purpose of putting them right before the court and jury, but it must not be considered as testimony in the case." But if such instruction had been requested, it would have been properly refused, since the witness said his former testimony was true and just what he meant at this trial.

[5] Appellant complains of this instruction: "You are instructed that it is the law, that one who is the general servant or employee of another may be loaned or hired by the master for some special service, so as to become as to that special service the servant of such third party; and where a general servant or employee is so loaned or hired to another, and as regards the particular service, for which he is so loaned or hired, is subject wholly to the direction and control of the other, the latter, and not the general employer, is the master, so far as the particular or special service is concerned, and is liable for injuries caused by the negligent and wrongful act of the servant, while engaged in the duties pertaining to such service." The instruction embodies a sound principle of law, and as a rational inference in harmony with the hypothetical situation therein presented could be drawn from the evidence in the case, we perceive no valid objection to the action of the court in giving it.

Appellant proposed a specific instruction as to each of the defendants other than himself similar to the following: "I instruct you that if you find from the evidence in this case that the death of Emmons Franklin Burns was caused solely by the negligence of the defendant, F. G. Prinderville, then your verdict must be in favor of defendant." It is apparent that no prejudice resulted from the refusal of the court to give them, since they were entirely covered by this direction to the jury: "If you find from the evidence in this case that the death of Emmons Franklin Burns was caused solely by the negligence of any person or persons, or corporation, other than George H. Jackson, or his servants, agents or employees, then your verdict should be in favor of defendant Jackson."

The only other point made by appellant is that since concededly the only ground, upon which plaintiff could recover from defendant Jackson, depends upon the theory that Prinderville was in the employ of Jackson, he is precluded from such recovery by the allegation in paragraph 6 of his complaint, "and defendant, F. G. Prinderville, was then employed by the defendant Diggs as his agent and servant to drive said motor truck while the same was being used in the transportation of said fruit." Appellant says: "That allegation, of course, was a proper one when plaintiff was seeking to fix liability on the defendant Diggs but manifestly out of place when seeking to charge the defendant Jackson." It appears that in paragraph 5 the complaint originally alleged that "said George H. Jackson was engaged in transporting said fruit . . . by means of a certain auto truck owned and operated by defendant, Jackson M. Diggs." In the original answer it was denied "that the said auto truck was, on said date, operated by the defendant, Jackson M. Diggs," but at the last trial appellant by leave of court amended his answer so as to strike out that denial. Thereupon plaintiff amended said paragraph so as to have it read: "That some of said fruits were then ready for shipment and sale, and on said 27th day of June, 1917, said George H. Jackson was engaged in transporting said fruit from said farm to various places, including a station called Oswald on the lines of the Southern Pacific Company in said county of Sutter, as aforesaid by means of a certain auto truck *owned* by defendant Jackson M. Diggs, along and upon a certain highway of said county of Sutter extending from the ranch of said Jackson to a station called Oswald, on the railway line of the defendant, Southern Pacific Company." Said paragraph 6, through oversight no doubt, was not amended as it should have been to make it consistent with said amended paragraph 5. However, the defect is not sufficient to justify a reversal of the judgment. The theory of plaintiff in the beginning was that defendants Diggs and Jackson were jointly liable for the negligence of Prinderville, and this joint liability he attempted to set forth in said sixth paragraph by the allegation: "That defendant Jackson is the grandfather of defendant Jackson M. Diggs, and they work together and exchange utilities with each other, and were so co-operating

at said date in the use of said auto truck." It may be admitted that the pleader was not fortunate in the use of terms but there was no demurrer and the case was tried three times without objection upon the theory that defendant Jackson was charged with responsibility for the operation of said truck; and for the first time in this court the point is made that the complaint is insufficient in that respect. The truth is, however, that the complaint is simply uncertain, since paragraph five as amended alleged, as we have seen, that defendant Jackson "was engaged in transporting said fruit by means of a certain auto truck owned by defendant Jackson M. Diggs." In connection with the other allegations this could only mean that he was transporting the fruit through the operation of said truck, thus rendering the complaint open to the charge of duplicity in view of paragraph six, but no objection was made and it is apparent that appellant should not be heard now for the first time to urge the point.

We think the judgment should be affirmed and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 15, 1923.

All the Justices concurred.