DEVANEY, Respondent, *v.* LAWLER CORPORATION,
APPELLANT.

(No. 7,491.)

(Submitted February 10, 1936. Decided February 28, 1936.)

[56 Pac. (2d) 746.]

*Mr. R. F. Gaines,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. M. S. Galasso* and *Mr. Harlow Pease,* for Respondent, submitted a brief; *Mr. Pease* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Silver Bow county.

On January 22, 1934, the plaintiff, William Devaney, was an employee of the Civil Works Administration of the Government of the United States. This department is commonly known as and will be referred to hereafter as the C W A. The defendant is a private corporation ordinarily engaged in general contracting. On the day in question plaintiff was being transported in a truck from the town of Divide to a point about five miles distant on the highway where certain C W A construction work was in progress.

In his complaint he alleged that defendant for a valuable consideration had agreed with the C W A to transport him from Divide to the scene of his work, and that pursuant to that agreement he was riding in a truck owned by defendant and driven by one Cooper, an employee; that Cooper drove the truck in such a negligent manner that plaintiff received serious personal injury. The allegations of the complaint were denied; the cause came to trial, and a verdict was awarded to plaintiff against the defendant.

A motion for a new trial was made, with the result that the court ordered a reduction of the verdict as a condition precedent to the denial of the motion for a new trial. The judgment was entered for the reduced amount designated by the court, and defendant appealed therefrom.

While several specifications of error have been made, they all present in some form a single question: Whose servant was Cooper, the driver, at the time of the accident? Nobody has questioned the sufficiency of the evidence to justify a finding of negligent operation of the truck. Defendant contends that the truck and driver were under the control and subject to the direction of the C W A, and that therefore it was not responsible for the negligence of the driver, but that the admitted liability devolved upon the C W A under the federal Workmen's Com-

pensation Act, instead of upon the defendant. This proposition was urged at every stage of the trial. Motion for nonsuit and directed verdict were made and denied, as was also the motion for a new trial.

Defendant bases its contention of nonliability upon the general rule announced by this court in the case of *Ellinghouse* v. *Ajax Livestock Co.*, 51 Mont. 275, 152 Pac. 481, L. R. A. 1916D, 836. In that case the court said: "A servant of one master may temporarily enter the services of another and for the time become the servant of the other; as when a servant is lent by his master to the other for a particular employment and becomes subject to the control of the other. For anything done in that employment he becomes, for the time being, the servant of the person to whom he is lent, provided he has consented to be lent." There can be no doubt of the soundness of the foregoing rule. The Court of Appeals of New York stated the matter in another way when it said: "It is well settled that one may be in the general service of another and nevertheless with respect to particular work may be transferred, with his own consent and acquiescence to the service of a third person so that he becomes the servant of that person with all the legal consequences of the new relation." (*Schweitzer* v. *Thompson & Norris Co.*, 229 N. Y. 97, 127 N. E. 904.)

With these general principles in mind it is important that we give consideration to the specific facts of this case. In November, 1933, the Government of the United States, desirous of relieving unemployment, enacted appropriate legislation for that purpose. In connection with the general program certain road building projects were launched; some of these were in the state of Montana. The Government had no independent organization and no equipment. In order that the work might be inaugurated without delay and pushed as rapidly as possible so as to furnish employment for workmen, the C W A department entered into an arrangement with the Montana State Highway department whereby it obtained an engineer to supervise its project work, and at the same time it authorized this en-

gineer to obtain the use of trucks and other necessary equipment for the conduct of the work.

One Hicks, an engineer previously in the employ of the State Highway Commission, was given general charge and control of this class of highway work. He became the general superintendent of the C W A highway projects. In order to obtain equipment promptly, Hicks contacted the Lawler Corporation, defendant here. This corporation had previously in its general business engaged in independent highway contracting. At the time it had several idle trucks since it was not then engaged in any of its own contracts. Hicks discussed the matter with Mr. Lawler, president of the corporation, and proposed to him that he hire to the C W A sufficient trucks to carry on the work. The matter was discussed between the parties and an agreement was reached.

Under the terms of this agreement Lawler, for his corporation, agreed to furnish trucks with drivers and turn them over to the C W A for its road building program. Under the verbal agreement defendant, in addition to furnishing the trucks and drivers, was required to furnish the necessary gas and oil for the operation of the trucks, and to furnish a repair man in order to keep the trucks in operation. Hicks on behalf of the C W A agreed to pay defendant a specified sum per hour for the use of such trucks with drivers, equipment and upkeep. Different rates of compensation were provided for different sized trucks. Defendant paid its own drivers, but retained no jurisdiction over them.

Cooper, the driver of the truck in which plaintiff was injured, and his fellow drivers were not regular employees of defendant but were obtained for that particular work. The C W A kept track of the time and hours of employment of trucks and drivers. Some of the trucks were worked for longer hours than were the drivers, so that there were more drivers than trucks on the job.

Defendant sent the trucks with the drivers to the points where the C W A road construction work was to be done. The only

instructions given to the drivers were that they should report to the C W A superintendent or foreman and there work under his orders. The drivers did so report and did subject themselves to the orders and direction of the superintendent and his designated foreman. The work consisted very largely of hauling dirt as directed by the C W A officials. These officials determined when and how long the various truck drivers and trucks should work or be worked, and when and for what purpose any particular truck should be used.

Defendant employed an additional man to keep the trucks in repair, and also had one of its regular employees in contact with the job to look after the supplies of oil and gas and in a general way check up on the time the various trucks and drivers were utilized. The C W A officials were not authorized to hire or fire drivers, although Mr. Hicks, the superintendent, stated that if any of the drivers had refused to carry out the instructions given by him or his foreman, they would have been discharged by him. It is clear that the drivers were all under the supervision of and subject to the sole direction of the C W A authorities.

In the beginning nothing was said between Hicks and Lawler as to the use of the trucks for transporting men. Apparently the understanding was somewhat general, and the trucks and drivers were simply turned over to the C W A to be used in any manner and for any purpose it desired in carrying out its purposes. Shortly after the work was begun it became necessary to transport the men to and from the town of Divide, where they lived or boarded, to the scene of the work a few miles distant. No other means of transportation seemed to be available; so the trucks were utilized for the purpose. No special truck was provided and the C W A foreman merely directed the driver of any truck he might select to transport the men. It was while a crew of men was being transported that the plaintiff was injured. This crew was being carried from Divide to the job by Cooper, who was acting under instructions of a C W A official.

In addition to directing the activities of the truck drivers,

the C W A foreman determined the hours of labor of such drivers, and thereby determined their rate of pay. He also designated the place or places where the trucks should be kept when not in use. This system had been in vogue for practically six weeks previous to the time of the accident. During that time defendant had exercised no supervision or control over either drivers or trucks.

Defendant contends that it is not liable in this action under the doctrine of *respondeat superior* for the negligence of the driver Cooper while engaged in the employment heretofore designated. On the other hand, plaintiff contends that since defendant owned the trucks and had the power of hiring and discharging drivers, and since it paid the drivers, it was liable to plaintiff under the doctrine of *respondeat superior*. In other words, plaintiff contends that Cooper and the other drivers were in fact and at all times the servants of the defendant, and never were the servants of the C W A.

This case presents a question upon which there has been much diversity of opinion. Authorities may be found for the support of either of the above contentions. However, there are several well-recognized principles and rules which are generally regarded as applicable and of controlling effect in most of the better reasoned cases.

As we have heretofore suggested, there is no question about the proposition that an employee may be the general servant of one employer and still become the particular servant of another, and that the latter may become liable for his acts. This is the rule recognized in the case of *Ellinghouse* v. *Ajax Livestock Co.*, supra, and may be found in 18 R. C. L. 784. It is thoroughly discussed in the annotations and the authorities cited in 42 A. L. R. 1417 et seq. It is generally held that when one person lends or lets his servant to another for a particular employment, the servant for anything done in that employment must be dealt with as the servant of the one to whom he is lent, although he may remain the general servant of the one who

loaned him. (*Denton* v. *Yazoo etc. Ry. Co.*, 284 U. S. 305, 52 Sup. Ct. 141, 76 L. Ed. 310; *Linstead* v. *Chesapeake & O. Ry. Co.*, 276 U. S. 28, 48 Sup. Ct. 241, 72 L. Ed. 453; *Scribner's Case*, 231 Mass. 132, 120 N. E. 350, 3 A. L. R. 1178; *Norfolk & Western Ry. Co.* v. *Hall*, 57 Fed. (2d) 1004; *Sargent Paint Co.* v. *Petrovitzky*, 71 Ind. App. 353, 124 N. E. 881; *Burns* v. *Jackson*, 59 Cal. App. 662, 211 Pac. 821; *Aderhold* v. *Bishop*, 94 Okl. 203, 221 Pac. 752, 60 A. L. R. 137; 18 R. C. L. 784.)

The rule of *respondeat superior* in this connection may be said to rest upon the power of control and direction which the principal has over the subordinate, and so can only be applied where the person sought to be held as master had the power of controlling and directing the servant  And this power of control or direction must be as proprietor, in the sense of being able to stop the work or to continue it, and to determine the way in which the work shall be done, with reference to the method of reaching the result, and not merely the result to be reached. (See annotations in 42 A. L. R. 1417, and cases cited.)

A determination of this matter calls for the consideration of many different factors. It is well expressed in the case of *Braxton* v. *Mendelson*, 233 N. Y. 122, 133 N. E. 198, where it was said: ''Ordinarily no one fact is decisive. The payment of wages; the right to hire or discharge; the right to direct the servant where to go and what to do; the custody or ownership of the tools and appliances he may use in his work; the business in which the master is engaged, or that of him said to be a special employer—none of these things give us an infallible test. At times, any and all of them may be considered. The question remains, In whose business was the servant engaged?''

The circumstance of who pays the servant for his service is not necessarily a controlling factor. (*Burns* v. *Jackson*, supra; *Scribner's Case*, supra; *Denton* v. *Yazoo etc. Ry. Co.*, supra; *Isaacs* v. *Prince & Wilds*, 133 Miss. 195, 97 So. 558; *Diamond* v. *Sternberg Motor Truck Co.*, 87 Misc. 305, 149 N. Y. Supp. 1000.)

There is authority for the proposition contended for by plain-

tiff that the power to select and discharge the employee is a controlling factor in such circumstances. Cases supporting this theory are as follows: *Schweitzer* v. *Thompson & Norris Co.,* supra; *Cattini* v. *American R. Exp. Co.,* 202 App. Div. 336, 196 N. Y. Supp. 10; *Billig* v. *Southern Pacific Co.,* 189 Cal. 477, 209 Pac. 241. We are of the opinion, however, that the better reasoned cases hold to the theory that the power to select and discharge an employee is not a controlling or determinative factor in all cases, but that it is merely an element which should be considered in a proper case along with other factors in deciding who actually had the right and power of control over the employee. (*Yelloway, Inc.,* v. *Hawkins,* 32 Fed. (2d) 731; *Braxton* v. *Mendelson,* supra; *Dubbison* v. *McMullin,* 163 Ark. 186, 259 S. W. 400; *Linstead* v. *Chesapeake & O. Ry. Co.,* supra.)

It may be fairly said that every case presents facts peculiar to itself. Different factors and elements tending to show the power of control in the general or special employer are presented in practically every case dealing with the subject. This perhaps explains to a great extent the seeming inconsistency and conflict among the decided cases. In the final analysis, however, the authorities are pretty generally in accord upon the proposition that the really determinative and controlling question is, In whose business was the servant engaged? This fact stands out in many of the cases to which we have already referred. Numerous others to the same effect may be found in the comprehensive annotations on this subject in 42 A. L. R. 1416 et seq. This court very recently had occasion to consider the matter in the case of *Johnson* v. *City of Billings,* ante, p. 462, 54 Pac. (2d) 579. That case may be distinguished from this; there the city was held because it was engaged with the county in a joint enterprise. It had assumed a joint proprietorship in the work under way. In the course of that work an outsider, a third person not connected with the employment, was injured. Here a workman on the job was injured, and the question to be decided turns upon the matter of whose servant was responsible

for the injury—a very different question from that involved in the *Johnson Case.*

In this case the evidence is very clear and free from conflict. ▌The matter then resolves itself into a legal proposition, which proposition is narrowed by the inquiry as to whose servant Cooper was at the time of the accident. It seems to us to be incontrovertible that he was engaged in the business of the C W A, that he was working for the C W A, and that the C W A was exercising complete control, domination and direction in the premises. We say this in spite of the fact that although defendant owned the trucks and employed and paid the drivers and perhaps had a right to discharge a driver, nevertheless it had no control, authority or supervision over either the trucks or the drivers during the time they were on the job; there they were under the absolute domination of the C W A officials.

It is important to have in mind in this connection that the defendant company was not generally engaged in hiring out trucks with drivers. It was not engaged in the general taxicab or trucking business; on the contrary, its business was that of general contracting, and it engaged in the C W A enterprise outside of the usual course of business and as hereinbefore outlined. It was not then and had not been engaged in the business of hiring its trucks out in the manner in effect on this occasion, or at all. (See *Thatcher* v. *Pierce,* 281 Pa. 16, 125 Atl. 302; see, also, *Yelloway, Inc.,* v. *Hawkins,* supra.)

Upon a careful review of the facts and circumstances as disclosed in the record in this case, we are forced to the conclusion that Cooper at the time of the accident was actually the servant of the C W A. Consequently it follows that, under the doctrine of *respondeat superior,* the defendant is not liable for plaintiff's injuries.

In this case we are not required to pass upon the question of the extent of the injuries sustained by the plaintiff. It is clear that he was injured and that he had a cause of action. What we say is that his cause of action is not against the defendant, and the motion for a directed verdict should have been sustained.

The judgment is reversed and the cause remanded with direction to enter judgment for defendant.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

Rehearing denied April 6, 1936.