EMMA KOBER AND LOUIE H. KYRISS, JR., AS GUARDIANS OF LOUIE H. KYRISS, SR., PLAINTIFFS AND APPELLANTS, v. JOHN H. STEWART AND BILLINGS DEACONESS HOSPITAL, DEFENDANTS AND RESPONDENTS.

No. 11082.
Submitted May 2, 1966. Decided August 8, 1966.
417 P.2d 476.

118

Sandall, Moses & Cavan, Valerie W. Scott (argued), Billings, for appellants.

Jardine, Blewett, Stephenson & Weaver, Great Falls, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, John Stephenson, Jr. (argued), Great Falls, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

Emma Kober and Louie H. Kyriss, Jr., as guardians of Louie H. Kyriss, Sr., brought suit against the Billings Deaconess Hospital and Dr. John H. Stewart for personal injuries suffered by Louie H. Kyriss, Sr., while a patient at the Billings Deaconess Hospital. The defendant-hospital made a motion for summary judgment based on the record. Briefs were submitted by both sides. The record before the court contained the depositions of Dr. John H. Stewart, Jo Anne Duffey, an X-ray technician, Louie Kyriss, Sr., and Dr. Hoyer, as well as the hospital's answers to the interrogatories. Also, the radiology agreement between the hospital and The Billings Clinic, the hospital records pertinent to Mr. Kyriss' injuries, and the Standards of Hospital Accreditation were all made a part of the record before the lower court.

The lower court granted defendant-hospital's motion for summary judgment. The guardians for Mr. Kyriss filed exceptions to the court's order. A full hearing on the exceptions was held, and the exceptions were denied. The guardians for Mr. Kyriss now appeal the summary judgment granted to defendant-hospital.

Mr. Kyriss, Sr., was admitted as a patient 'to the Billings Deaconess Hospital on March 22, 1964. He was eighty years

old. He had abdominal pains and the doctor on duty, Dr. Paul Hoyer, ordered that an "abdominal series" of X-rays be taken by the X-ray department. He was taken from his hospital room to the X-ray department by an X-ray technician. When the technician was unable to get Mr. Kyriss to sit up she called for a nurses' aide. She took a flatplate X-ray and chest X-ray of Mr. Kyriss. Then Dr. John Stewart, one of the radiologists in charge of the diagnostic X-ray department of the hospital, arrived while both technician and nurses' aide were still in the room.

Dr. Stewart told the X-ray technician to move the overhead tube in a position for the taking of an upright X-ray. As she did this, Dr. Stewart lowered the "fluroscopic screen" over the chest of Mr. Kyriss who was still lying horizontally on the X-ray table. The nurses' aide went over to the left side of the table opposite the doctor and held on to Mr. Kyriss by his arm Mr. Kyriss' feet were at the footboard at the end of the table. There were no belts or handholds to which Mr. Kyriss could have held onto the table.

Dr. Stewart held the screen against Mr. Kyriss' chest with his right hand, and he held Mr. Kyriss' arm with his left hand. Dr. Stewart stood on his right foot and with his left foot he operated a pedal connected to the table. At a result of the pedaling, the table began to tilt slowly forward moving from a horizontal toward a perpendicular position. When the table reached a forty-five degree angle, Mr. Kyriss started sliding down the table. Mr. Kyriss continued to slide until he reached a squatting position at the end of the table. Dr. Stewart let go of the screen and straightened Mr. Kyriss' legs out in front of him and then lowered the table back to a horizontal position.

Mr. Kyriss reported, as the result of the accident, pain. The next day, Dr. Bowman, Mr. Kyriss' regular physician, told Dr. Stewart that Mr. Kyriss was complaining that his knees hurt.

X-rays taken that next day revealed that Mr. Kyriss' left leg had a fracture of the thigh bone just above the knee joint, and

that the left side of the left knee had been slightly crushed. On the right leg there was a traverse fracture to the shaft of the tibia.

To be accredited by the Joint Commission on Accreditation of Hospitals, and as a service to patients and private physicians, the Billings Deaconess Hospital must provide an X-ray department, equipment, technicians, and radiologists. Also, the hospital must provide "Personnel adequate to supervise and conduct the services * * *."

In order to provide these services, the hospital has contracted with The Billings Clinic to provide "a competent director, who shall be a qualified radiologist, for the diagnostic X-ray department operated by the hospital."

The contract provisions pertinent to this case read:

"2.   The Clinic will, at its own expense, provide a competent director, who shall be a qualified radiologist, for the diagnostic X-ray department operated by the hospital. The director will interpret X-ray films, do fluoroscopic work, give the deep therapy treatments, and perform such other duties as are incidental thereto. He shall supervise and lay out the work for other employees in the department, and be responsible for seeing that there is ample coverage in the department, or on call, at all times.

"The hospital will furnish all employees for the diagnostic X-ray department other than the director and shall pay their salaries, and these employees shall be subject to the rules and regulations of the hospital pertaining to all of its employees. All applicants under consideration for employment in the diagnostic X-ray department however shall be referred to the director by the administrator of the hospital, and no person shall be employed in this department without the express approval of the director.

"3.   All charges for diagnostic X-ray services shall be made in accordance with Schedule 'A' hereto attached and hereby made a part of this agreement. * * * The hospital will pay the

Clinic thirty-five percent (35%) of the gross receipts from such diagnostic X-ray services, such payment to be made shortly after the close of each month's business."

The question before this court is whether the district court erred in granting the defendant-hospital's motion for summary judgment. The primary issue is whether, as the district court found, the radiologist was an independent contractor rather than an agent of the hospital. Additionally, error is urged that sufficient allegations of primary negligence on the part of the hospital supported by the record made raised a justiciable issue.

Rule 56, M.R.Civ.P., subsections (b) and (c), so far as pertinent, provide:

"(b)  *For Defending Party.*  A party against whom a claim * * * is asserted * * * may, at any time, move for a summary judgment in his favor as to all or any part thereof.

"(c)  *Motion and Proceedings Thereon.*  The motion shall be served at least 10 days before the time fixed for the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* * * *"  Emphasis added.

This court must determine whether or not there is an issuable question of fact. Respondent-hospital contends that Dr. Stewart was an independent contractor over whom the hospital had no control at the time of the accident. Appellants argue that Dr. Stewart was performing his duties as an agent of the hospital, and that therefore the hospital is liable for the negligent act of Dr. Stewart.

In this case, respondent has the burden of showing the absence of any genuine factual issue. 6 Moore F.P.2d, § 56.15 [3], starting at p. 2335 reads:

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence

of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law.

"The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.

"Since it is not the function of the trial court to adjudicate genuine factual issues at the hearing on the motion for summary judgment, in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. And the papers supporting movant's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the movant has satisfied his burden."

In Whaley v. Fowler, 152 Cal.App.2d 379, 313 P.2d 97 (1957), the California court noted that the summary judgment statute was not intended nor can it be used as a substitute for existing methods in the trial of issues of fact; and that if there is any doubt as to the propriety of the motion, courts should, without hesitancy, deny the same.

Present in this case are facts that lead to the conclusion that respondent has failed to meet its burden of proof. There is an issuable question of fact. Mr. Kyriss was admitted to the hospital suffering from abdominal pains. Dr. Hoyer ordered that an abdominal series of X-rays be taken by the hospital. There is no evidence on the record that Dr. Hoyer requested that Dr. Stewart take or read the X-rays. There is no evidence on the record that Mr. Kyriss knew Dr. Stewart or requested that he take the X-rays.

There were three radiologists at the time of the accident. One of the three served the hospital for a three-month period while the other two served The Billings Clinic. Then they alternated. The records show that on Sunday afternoon, March 22, 1964, an unidentified employee of the Billings Deaconess

Hospital called Dr. Stewart at his home and asked him to come to the hospital to read X-rays. She called Dr. Stewart because he was "on call" for the weekend. It is apparently "standard procedure" for the hospital, not a patient's private physician, to call the radiologist on duty to read films in serious cases.

The contract shows that the hospital and not the Clinic, operates the X-ray department, employs the technicians, owns the space and the equipment, and charges the patients for the services. The contract further provides that the "hospital will pay the clinic thirty-five percent (35%) of the gross receipts of such diagnostic X-rays services."

When a patient is to be X-rayed, he is to be X-rayed by the hospital department. The patient does not contract with the radiologist to take his X-rays.

It would appear that the contract between the Hospital and the Clinic may have been merely the means by which the Hospital hired a supervisor for the department. At this stage, this court cannot determine from the contract whether Dr. Stewart is an independent contractor or an agent of the hospital. Nowhere in the contract is the director specifically labeled an independent contractor. The agreement simply lists the general duties of the director which are to direct and supervise the diagnostic X-ray department "operated by the hospital." This does not necessarily mean that the hospital no longer has control over the director. The Clinic contracted to furnish a qualified radiologist. Regardless of whom the radiologist was, it is conceivable so far as Mr. Kyriss was concerned, that he was the agent of the hospital, performing his services pursuant to the rules of the hospital medical staff. 6 Moore F.P.2d, § 56.17 [41.-1] indicates that summary judgment should be used sparingly where the intent of the contracting parties plays a leading role.

It must be remembered that on this type of motion the defendant-respondent's liability or non-liability need not be proved. All that is involved in the appeal is the determination

of whether or not there is a genuine issue of fact. To this end the appellant has succeeded.

Whether Dr. Stewart was an independent contractor or an agent of the hospital as to Mr. Kyriss will, in all likelihood, be determined by the trier of fact as the issue is developed. Additionally, although we have not discussed it here, allegations of negligence on the part of the hospital, independent of the activity of the radiologist, are alleged sufficiently to raise an issue of fact. So, for this additional reason, the district court erred in granting summary judgment.

Under the circumstances of this case, the lower court erred in granting summary judgment, and that judgment is hereby reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, JOHN C. HARRISON and CASTLES concur.