ARLIN C. LEWIS, Plaintiff and Appellant, v. LYNN W.
POTTER et al., Defendants and Respondents.

No. 11072.
Submitted April 10, 1967. Decided May 12, 1967.
427 P.2d 306.

Baldwin & Jellison, Kalispell, for appellant.

S. Y. Larrick, Kalispell, for respondents.

Robert Swanberg and L. V. Harris, Helena, amicus curiae.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the
Opinion of the Court.

This is an appeal from an order of the district court granting defendants' motion for summary judgment.

We wish to preface our discussion of this case by stating that this is an action brought by an employee against third persons whom such employee alleges caused the injuries which he received in the course of his employment, as permitted by section 92-204, R.C.M.1947, a part of the workmen's compensation act. For this reason the matter of workmen's compensation is not otherwise mentioned in this opinion, such compensation being paid to a workman injured in the course of his employment under other provisions of the workmen's compensation law, and it is not here involved.

The plaintiff-appellant is Arlin C. Lewis and will be referred to as plaintiff. The defendants-respondents are all members of the same family who have formed a partnership which does business as Cascade Machine Works and Montana Plywood. The individual members of the partnership are Lynn W., Dora M., Donald L., and David E. Potter. We will refer to the individual members of the partnership by name and to all the members of the partnership as defendants.

The only issue presented by plaintiff in this appeal is stated in his brief in this manner: "Did the District Court err in entering summary judgment in the instant case upon its conclusion that the loaned servant doctrine was applicable under the facts of the case?"

The events which led up to the accident and which established the relationships between the various individuals that were working at the scene of the accident are these:

Howard Hamilton the employer and direct supervisor of plaintiff, Arlin C. Lewis, owned and operated the Whitefish Block Shop, a business generally engaged in excavating, cement, sand and gravel operations. School officials in Whitefish, Montana, approached Hamilton concerning his interest in digging up and removing from the school premises a large oil fuel tank which was no longer being used. There was no writ-

432

ten agreement between Hamilton and the school officials, but Hamilton did agree to dig up the tank to remove it from the school premises, and to backfill the area. Hamilton also agreed that these operations would be performed during a period of the year when the children were not attending school.

During the last week of December, 1962, Hamilton began his project. He immediately determined that his equipment alone would not be adequate to remove the tank as it was quite large. The tank was cylindrical in shape, having the approximate dimension of 10 feet in diameter and 22 feet in length. The record contains no reference to the exact weight of the tank, but from the difficulty encountered in attempting to remove it from the hole in which it rested, it can be assumed that its weight was considerable.

Hamilton contacted two other business firms that were generally engaged in the business of excavating. He rented a backhoe (with operator) from Ole's Plumbing in Whitefish and a backhoe (with operator) from B & F Excavating in Columbia Falls. Hamilton also had various pieces of his own excavating equipment at the scene.

After the tank had been uncovered, Hamilton decided that he would need additional equipment, and he contacted Lynn Potter concerning the possibility of securing the use of defendants' "cherrypicker."

At this point we note that defendants are generally engaged in the plywood business. Their business does extend to some machine shop repairs and to some logging operations. However, their regular business is not excavating nor renting equipment that can be used for this purpose.

Lynn Potter supplied the "cherrypicker" (with operator) to Hamilton, but this additional equipment was still inadequate. Hamilton again sought the aid of Lynn Potter and requested the use of a bulldozer. Defendants supplied a bulldozer (with operator).

The bulldozer arrived on the scene on the afternoon of De-

cember 31, 1962. Cables had been strung around the tank and attached to the various pieces of equipment. Likewise another cable was strung around the tank and attached to the bulldozer after it arrived on the scene. Initial attempts to pull the tank out of the hole after the bulldozer was connected to the tank were unsuccessful. It was then decided that the cable around the tank and connected to the bulldozer should be slid lower around the tank.

Plaintiff, who was an employee of Hamilton, Hamilton, and another man jumped into the hole to slide the cable down into a lower position. Plaintiff grabbed the cable at a place where the cable wrapped around the tank and pulled down. Hamilton began moving out of the hole to signal the bulldozer operator to make a move to give the cable more slack. It was at this time that somehow the slack in the cable quickly took up, cutting off some fingers on plaintiff's left and right hands.

Plaintiff sued defendants alleging that the operator of defendants' bulldozer had operated the bulldozer in such a negligent and careless fashion as to cause plaintiff's injury. In preparation for the trial of this action, many depositions were taken from the various parties and individuals who had any knowledge of the accident. Upon these depositions and other pleadings that were part of the district court file, the defendants moved for summary judgment contending that the operator of the bulldozer was in fact a loaned servant or employee of Hamilton, and thus, the plaintiff was barred from recovering from defendants.

The district court granted defendants' motion for summary judgment, agreeing with their contention. Plaintiff admits that his action will not lie if the bulldozer operator is indeed the loaned servant or employee of Hamilton. But it is plaintiff's contention that the facts of this case do not justify the district court's conclusion. We disagree with plaintiff's position and find that the facts do support the district court's ruling.

As noted in the briefs of both parties, there have not been

many decisions in Montana on the question of the loaned servant doctrine. This court has rendered several decisions which have analyzed the decisions from other jurisdictions and have established the legal rules which determine when the employee or servant of one person becomes the employee or servant of another.

One case which dealt with this question was Devaney v. Lawler Corp., 101 Mont. 579, 589, 590, 56 P.2d 746. The facts of that case are briefly these: As is well known, during the early 1930's the Congress of the United States enacted legislation to combat the widespread unemployment that then existed. Congress created various government agencies to carry on public work projects. The Civil Works Administration (CWA) was one of these agencies. The CWA was without the necessary men and equipment, but it quickly hired various personnel. These men in turn arranged for equipment. One Hicks was general superintendent of the CWA highway work in Montana. He entered into an agreement with the Lawler Corporation whereby Lawler Corporation agreed to furnish trucks and drivers to the CWA, to properly gas and oil these trucks, and to furnish a man to keep the trucks in good repair. In return, the CWA agreed to pay a set sum per hour for the truck with the driver and the agreed upkeep. The Lawler Corporation was to pay the drivers itself. Lawler Corporation had previously been engaged in general highway construction work, and this business of renting out trucks was not its usual business.

Devaney, an employee of the CWA, was injured when a truck in which he was a passenger was involved in an accident. The truck and its driver, one Cooper, had been supplied to the CWA by Lawler Corporation. Devaney sued the Lawler Corporation for Cooper's alleged negligence, but Lawler Corporation contended that Cooper was in fact the servant or employee of the CWA. This court first discussed the appropriate factors to be considered in determining whose servant Cooper was: "Different factors and elements tending to show the power of

control in the general or special employer are presented in practically every case dealing with the subject. This perhaps explains to a great extent the seeming inconsistency and conflict among the decided cases. In the final analysis, however, the authorities are pretty generally in accord upon the proposition that the really determinative and controlling question is, In whose business was the servant engaged? This fact stands out in many of the cases to which we have already referred."

This court then continued to explain its reasons for finding that Cooper was an employee of the CWA in the following manner: "The matter then resolves itself into a legal proposition, which proposition is narrowed by the inquiry as to whose servant Cooper was at the time of the accident. It seems to us to be incontravertible that he was engaged in the business of the CWA, that he was working for the CWA, and that the CWA was exercising complete control, domination and direction in the premises. We say this in spite of the fact that although defendant owned the trucks and employed and paid the drivers and perhaps had a right to discharge a driver, nevertheless it had no control, authority or supervision over either the trucks or the drivers during the time they were on the job; there they were under the absolute domination of the CWA officials.

"It is important to have in mind in this connection that the defendant company was not generally engaged in hiring out trucks with drivers. It was not engaged in the general taxicab or trucking business; on the contrary, its business was that of general contracting, and it engaged in the CWA enterprise outside of the usual course of business and as hereinbefore outlined. It was not then and had not been engaged in the business of hiring its trucks out in the manner in effect on this occasion, or at all."

We have quoted extensively from the Devaney case, supra, since the facts of the instant case fit very closely with the facts of the Devaney case. The facts show that it was Hamilton's

project; that he was in charge and directed the operations; and that he obtained the necessary men and equipment. Hamilton's position is similar to the position of the CWA. Like the CWA, Hamilton may have been unable to fire the bulldozer operator, but he did have supervision over him during the time the operator took part in the operations. Defendants were paying the bulldozer operator and could have fired him and replaced him with another operator, but they could not, and did not, supervise his performance at the scene of the tank removal.

Another important factor noted in the Devaney case, supra, was the fact that defendant Lawler Corporation was not generally engaged in the type of business in which plaintiff was injured. In the instant case, it is not the usual business of defendants to rent out bulldozers to aid in excavation projects.

In Oklahoma Ordnance Works Authority v. Garrison (Okla. 1967) 424 P.2d 983, 985, the Supreme Court of Oklahoma noted that the usual loaned servant case arises "* * * where it is not the usual business of the original master to loan or hire out such servant and the business of such master is not directly furthered thereby, the borrowing master alone benefitting from the servant's labor and the original master making no profit from the borrowing of his servant."

Defendants' bulldozer and its operator were clearly engaged in Hamilton's business, and Hamilton was the one who stood to profit from the work performed by the bulldozer and its operator. As long as defendants consented to the bulldozer and its operator remaining at the job, they were powerless to control the operator, and they did not stand to benefit from the removal of the tank.

The district court properly concluded that the bulldozer operator was the loaned servant or employee of Hamilton and did not err in granting the motion for summary judgment.

The order appealed from is affirmed.

MR. JUSTICES DOYLE, ADAIR, CASTLES and JOHN CONWAY HARRISON concur.