WESTERN FOUNDRY, INC., Plaintiff and Appellant, v.
E. L. MATELICH, et al., Defendants anl Respondents.

No. 11126.
Submitted October 18, 1967. Decided November 15, 1967.
433 P.2d 789.

Tipp & Hoven, Vernon Hoven (argued), Missoula, for appellant.

Worden, Worden, Thane & Robb, Shelton C. Williams (argued), J. G. Thane (appeared), J. Robert Riley, Missoula, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by the plaintiff from an adverse judgment entered in favor of the defendant Matelich Construction Company in an action seeking damages for alleged negligence of defendant's employee in the operation of a crane. The cause was tried before the court, sitting without a jury, and the court made findings of fact and conclusions of law, finding that there was no evidence to support a finding of negligence on the part of the defendant.

From the record it appears that defendant construction company was leasing a large crane in their work constructing a building to house the Forest Service Fire Research Laboratory at Missoula. The plaintiff foundry company had constructed and contracted to install a wind tunnel in the laboratory and they were in need of a crane to insert a section of the wind tunnel through an opening in the wall of the building. The foundry company approached the construction company with request to borrow the crane and also requested an operator for the crane. At this time the crane had a twenty-foot jib boom attached at the end of the main boom which had a lifting capacity of between 2,700 and 5,000 pounds. When the request for the use of the crane was made the construction company foreman told the foundry company foreman to remove the jib before attempting to lift the wind tunnel section. As the foreman stated at the trial: "I told him not to lift

that thing with that jib because I told him it wasn't designed to lift anything that heavy, and he said he wouldn't."

The arrangement was made that the construction company would charge the foundry company the exact amount they were required to pay to the lessor of the crane and the foundry company would also be charged the exact amount for the services of the operator as the construction company was itself paying the operator for the time he worked. The construction company made no profit in the transaction.

On the day of the difficulty the crane operator came to the construction site, there was a conversation between employees of the foundry company, including their foreman, the man who had moved the tunnel section from the foundry company to the construction site, and the crane operator, and in spite of the warning about removing the jib from the crane it was decided the jib would support the weight of the wind tunnel. The riggers were employees of either the mover or the foundry company and they attached the wind tunnel to the crane and told the crane operator to make the lift. It appears that the wind tunnel section weighed approximately 22,000 pounds and the rated lifting capacity of the jib on the crane, as heretofore stated, was between 2,700 and 5,000 pounds.

As the crane lifted the section, the jib boom gave way and the wind tunnel section dropped back on the supports from which it had been lifted and the foundry company claimed that the fall caused damage to the wind tunnel.

The issues presented for review by the plaintiff concern certain findings of fact made by the court. No motion to amend the findings was made by the plaintiff as permitted under Rule 52, M.R.Civ.P. For an explanatory discussion see our recent opinion in Stapp v. Nickels, 150 Mont. 434 P.2d 141, regarding Rule 52, M.R.Civ.P., and other associated rules and statutes.

The findings which plaintiff questions were that despite the warnings given plaintiff's job superintendent relative to the

capacity of the jib boom the plaintiff attempted to lift the wind tunnel section using the jib boom on the crane and because of the excessive weight the jib boom collapsed; that the attempted lifting was made under the direction and instructions of the agents and servants of the plaintiff, and the damage was attributable to the acts of the plaintiff's agents and servants in attempting to lift a load in excess of the capacity of the equipment which plaintiff rented, despite the warnings given relative to the capacity of the jib boom. Further, that there was no failure, omission or neglect on the part of the defendants which was in any way connected with or acted as a proximate cause of the accident.

These findings are supported by a preponderance of the evidence.

It is not necessary to enter into a detailed discussion of the law in this matter since this cause clearly falls within the scope of the loaned servant doctrine. That doctrine was before this court recently in Lewis v. Potter, 149 Mont. 430, 427 P.2d 306. In the Lewis case the plaintiff was an employee of the borrower and sued the owner of the equipment for injuries. In the instant case it is the borrower suing the company from which the equipment was borrowed for damages. The principle of law is the same and is fully discussed in the Lewis case.

We can summarize the situation here much as we did in the Lewis case because defendant's leased crane and its operator were clearly engaged in the plaintiff's project and the plaintiff was the one who stood to profit from the work performed by the crane and its operator. It was the plaintiff who was in charge through its employees and agents and directed the operation, giving all orders to the crane operator. Defendant did not in any manner control the crane operator, nor did it stand to benefit from the placement of the wind tunnel, and it was not the usual business of defendant to hire or loan out

its equipment or servant. All the factors arising to make the loaned servant doctrine applicable are present here.

The judgment entered by the district court achieved the correct result and it is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN C. HARRISON concur.