No. 12332

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

OTTO STENSVAD,

Plaintiff and Respondent,

-vs-

MINERS AND MERCHANTS BANK
OF ROUNDUP, MONTANA,

Defendant and Appellant.

---

Appeal from:  District Court of the Fourteenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Neely and Ball, Billings, Montana
Thomas Towe argued, Billings, Montana

For Respondent:

Sandall, Moses and Cavan, Billings, Montana
Charles F. Moses argued, Billings, Montana

---

Submitted:  September 12, 1973

Decided:  DEC 2 8 1973

Filed: DEC 2 8 1973

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant The Miners and Merchants Bank of Roundup, Montana, brings this appeal from a summary judgment entered by the district court of Musselshell County which exonerated the obligation of plaintiff Otto Stensvad as guarantor on certain credit transactions.

The credit transactions involved took place between Larry D. Stensvad and corporations he controlled as borrowers; Otto Stensvad, his father, as guarantor; and the Bank as lender. The borrowed funds were used in establishing and operating a cattle feeding business begun in the latter part of 1969. Four separate corporations were involved in the operation of the business: (1) an elevator and feed plant in Roundup, incorporated as Agri-Services, Inc.; (2) a feedlot near Roundup incorporated as M-V Enterprises, Inc.; (3) a second **feedlot** near Melstone, Montana, incorporated as M & S Cattle Feeders; and (4) the L.D. Stensvad Cattle Company. The last named company was incorporated to buy cattle and resell them to investors under a contract arrangement which provided that the cattle would be fed on one of the two feedlots with feed supplied by the elevator.

The majority of the stock in these four corporations was owned by Larry Stensvad and his wife Majorie. Otto Stensvad had a minority interest in two of the corporations. On January 2, 1970, Otto Stensvad executed a guaranty of credit in favor of the Bank for the benefit of Agri-Services in the amount of $200,000.

During the summer of 1971, the entire cattle feeding operation ran into financial difficulties and a dispute arose between the litigants concerning credit advances requested of and made by the Bank. It appears the Bank took over the actual operation of the feedlots and elevator at the written request of Larry Stensvad's attorney and obtained a pledge on virtually all properties owned by the four corporations. On July 14, 1971, the Bank took

a voluntary assignment of all the stock owned by Larry Stensvad and his wife in three of the corporations: Agri-Services, M-V Enterprises and M & S Cattle Feeders.

On September 16, 1971, Otto Stensvad executed another guaranty of credit in the amount of $200,000 in favor of the Bank for the benefit of M-V Enterprises, M & S. Cattle Feeders, L. D. Stensvad Cattle Company, and L. D. Stensvad as an individual.

By November 1971, it appears that the outstanding balance of all loans from the Bank was in excess of one million dollars. On or about November 15, 1971, Otto Stensvad sent the Bank a purported "notice of termination of guaranty contracts" and filed the present action in district court.

On December 31, 1971, the Bank sent notice to Larry Stensvad and his wife that the assigned stock certificates would be sold at private sale. The Bank was unable to sell the stock of Agri-Services, M-V Enterprises and M & S. Feeders, apparently due to the high indebtedness of those corporations.

On January 17, 1972, the Bank demanded a meeting of the officers of Agri-Services, M-V Enterprises and M & S Cattle Feeders for the purpose of passing a resolution authorizing liquidation of assets to be applied against debts. After refusal of the officers to assent to a sale, the Bank sought and obtained a writ of mandate compelling transfer of the corporate offices and registered ownership of the stock to the Bank. The Bank then advertised a sale of all corporate assets. Larry Stensvad filed a lawsuit for wrongful conversion against the Bank, causing lis pendens to be filed on all real estate to be sold. Only bid-ins by the Bank were received on the real property; all other property was sold at public auction sale held on June 10, 1972. The Bank claims a deficiency after application of sale proceeds of $484,077.09, plus interest. Other litigation is pending concerning this series of transactions and events.

Plaintiff Stensvad's motion for summary judgment urged (1) the Bank has asserted ownership and control over three of the

corporations, Agri-Services, M-V Enterprises and M & S Feeders; that as a matter of law this is full satisfaction of all claims and releases the guarantor, and (2) this control alters the original obligations between the parties and impairs the remedies or rights of the parties in respect thereto.

The court granted plaintiff's motion as a matter of law on these grounds:

> "IT IS ORDERED that Plaintiff's motion for summary judgment is hereby granted and allowed. The whole purpose of the bank's actions in this case was to eliminate the debtor's right of redemption which the bank admits on page 8 of its brief. Laudable as their purpose may be in doing this, this Court does not believe it can be done without freeing the guarantor." (Emphasis supplied).

The issues on appeal are:

(1) Did any action by the Bank with respect to the corporate stock or assets exonerate Otto Stensvad as guarantor?

(2) Was summary judgment proper upon the facts before the district court?

Issue (1). Section 87A-9-505, R.C.M. 1947, (identical to the official version of the Uniform Commercial Code §9-505), is cited by respondent Stensvad as applicable to the facts here. Section 87A-9-505(1), R.C.M. 1947, is applicable only to a security interest in consumer goods. Anderson, Uniform Commercial Code, V.4, § 9-505:3, p. 631; Tops Cleaners, Inc., 20 Pa. D. & C. Reports 2d 264. The present case involves debts secured by pledged stock certificates and partially guaranteed by two separate contracts existing between the litigants.

Section 87A-9-505(2), R.C.M. 1947, is applicable to security interest in consumer goods and to other types of collateral. The scope and purpose of this section is to insure that a debtor in default will lose as little as possible when the secured creditor elects to enforce his security interest. Hence, the instances in which the collateral may be retained in satisfaction of the debt are limited in two ways: (1) requiring notice by the secured creditor to the debtor; and (2) providing the debtor opportunity

- 4 -

to object to retention of collateral in satisfaction of the debt if it appears to the debtor that a sale of the collateral might be more favorable to him. Coogan, Hogan & Vaghts, Secured Transactions Under the U.C.C., V. 1, § 8.04; Willier and Hart, U.C.C. Reporter-Digest, V. 6D, § 9-505.

Here it appears the defaulting debtors were never given notice by the secured creditor of an intent to retain the collateral in satisfaction of the debt. Rather, the defaulting debtors were given notice of an intent to enforce the security interest by means of a sale of the pledged collateral. It appears the defaulting debtors then resisted the Bank's exercise of that right, causing the Bank to seek a writ of mandate which ultimately effectuated a sale. The defaulting debtors cannot rely on section 87A-9-505(2), R.C.M. 1947, to contend the Bank's actions in achieving a sale somehow constituted a recision and satisfaction of the debt so as to bar further recovery thereon.

Section 30-208, R.C.M. 1947, is applicable and provides:

> "A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in anywise impaired or suspended." (Emphasis supplied).

Respondent Otto Stensvad contends that the right of redemption by the debtor corporations owning the real property was altered by the Bank's action with respect to the pledged stock certificates. This point is not well taken. First, it is questionable whether, as a matter of law, the rights of redemption existing in the debtor corporations were eliminated by the Bank's actions. Second, under section 30-208, R.C.M. 1947, an alteration or elimination of debtor's remedies does not result in exoneration of the guarantor. Issue 2. Under Rule 56(c), M.R.Civ.P., the moving party for summary judgment must bear the burden of proving the absence of any genuine issue as to all material facts which would, as a matter of law, entitle him to judgment. Kober & Kyriss v. Billings Deaconess Hospital, 148 Mont. 117, 417 P.2d 476.

From our examination of the record, we do not find it to be an undisputed fact that the original obligations of the principal debtors were altered by any action taken by the creditor. Nor do we find it to be an undisputed fact that the actions taken by the creditor against the debtors impaired or suspended the creditor's rights, so as to invoke the exoneration provisions of section 30-208, R.C.M. 1947.

Several disputed but relevant factual issues are apparent from the record, e.g.: whether the Bank acted in a commercially reasonable manner in making the disposition of collateral; whether the actions of the creditor Bank caused any actual prejudice to the guarantor's obligation under the guaranty contracts; whether the actions of the creditor relied upon by respondent completely exonerate the guarantor of all obligations or apply equally to each of the debtor entities covered in the guaranty contracts; whether the express terms of the guaranty contracts contained a waiver; and, whether the fact the second guaranty contract was executed after pledge of stock by debtor implies a waiver or ratification by guarantor of possible prejudice to his position.

Accordingly, the judgment is reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion.

_____
                    Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
          Justices.

- 6 -