No. 13142

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

JOHN O. STORRUSTEN,

Plaintiff and Appellant,

-vs-

ROBERT HARRISON; KEHRWALD CONSTRUCTION
COMPANY, and JOHN DOE, an individual,

Defendants and Respondents.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellant:

McKittrick and Duffy, Great Falls, Montana
Joseph W. Duffy argued, Great Falls, Montana

For Respondents:

Corette, Smith and Dean, Butte, Montana
Gerald R. Allen argued, Butte, Montana
Poore, McKenzie, Roth, Robischon and Robinson,
 Butte, Montana
Allen R. McKenzie argued, Butte, Montana

---

Submitted: March 12, 1976

Decided: MAY 3 1976

Filed:

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff, John O. Storrusten appeals from summary judgment entered by the district court, Beaverhead County, for defendants Kehrwald Construction Company and Robert Harrison, relieving them of liability for plaintiff's injury.

The events leading to plaintiff's injury are: On May 17, 1971, defendant Harrison contracted with defendant Kehrwald Construction Company for the construction of a calving shed on Harrison's ranch property in Beaverhead County. Pursuant to this contract, Kehrwald Construction purchased numerous fifty-foot trusses from Brenna Truss Company in Great Falls, Montana, with the understanding that the trusses would be delivered to the construction site by Brenna. Plaintiff Storrusten, an employee of Brenna, helped load the trusses on a truck and delivered them to the ranch on July 12, 1971. Upon arrival, plaintiff was asked by defendants to participate in the unloading of the trusses. Harrison provided his own services, as well as that of his employee Jim McAndrews, and a tractor loader. Melford Kehrwald, owner of Kehrwald Construction, provided his services as well as that of his father, Charles Kehrwald.

The unloading procedure was: plaintiff would cut some of the bands holding the bundled trusses and chain up those trusses to be removed; the remaining band was held in place to keep the trusses from springing apart until Storrusten could be clear. Once he was clear he would signal Charles Kehrwald, who would then cut the remaining band. McAndrews, operating the tractor-loader, would hoist the trusses off the truck. Harrison and Melford Kehrwald then stacked the unloaded trusses.

No problem developed in the unloading until the last bundle. At that time, Storrusten alleged Charles Kehrwald cut the last band before he had an opportunity to get out of the way

- 2 -

and Storrusten was struck by the falling trusses, sustaining serious neck and shoulder injuries.

The amended complaint alleged Storrusten received these injuries as a direct and proximate result of the negligence of Charles Kehrwald, while acting within the scope of his employment for Kehrwald Construction Company, Harrison, or both.

Depositions were taken of Storrusten, Harrison, Melford Kehrwald and Charles Kehrwald. Finding the loaned servant doctrine applicable, the district court granted summary judgment to Kehrwald Construction. Apparently agreeing with Harrison's contention as to the lack of responsibility on his part for the unloading operation, the district court also granted summary judgment to Harrison.

The issues on appeal are:

(1) Was summary judgment in favor of Kehrwald Construction Company proper upon the facts before the district court?

(2) Was summary judgment in favor of Robert Harrison proper upon the facts before the district court.

Under Rule 56(c), M.R.Civ.P., defendants, being the moving parties for summary judgment, had the burden of proving the absence of any genuine issue as to any material fact to be entitled to judgment, as a matter of law. Stensvad v. Miners & Merchants Bank, 163 Mont. 409, 517 P.2d 715. In determining the extent of the moving party's burden in a summary judgment action, this Court in Kober & Kyriss v. Billings Deaconess Hospital, 148 Mont. 117, 122, 417 P.2d 476, recognized the principle of law stated in 6 Moore's Federal Practice, § 56.15[3] and quoted:

> "'The courts hold the movant to a strict standard.
> To satisfy his burden the movant must make a
> showing that is quite clear what the truth is,
> and that excludes any real doubt as to the exis-
> tence of any genuine issue of material fact.'"

In view of these considerations, we hold Harrison met this burden, but Kehrwald Construction Company did not.

Considering the summary judgment in favor of Kehrwald Construction Company, the memorandum accompanying the district court's order stated the loaned servant doctrine precluded Kehrwald Construction Company from being held liable for Storrusten's injuries. Plaintiff, on the other hand, contends Kehrwald Construction failed to meet its burden of conclusively showing that Charles Kehrwald, the man whose actions allegedly proximately caused plaintiff's injuries, became the borrowed servant of plaintiff for the duration of the unloading operation. After examining the record, we agree with plaintiff's contention. The record reveals Charles Kehrwald was in the employ of Kehrwald Construction Company.

In an action where the loaned servant doctrine becomes an issue, the ultimate question is--in whose business was the servant engaged? Devaney v. Lawler Corp., 101 Mont. 579, 56 P.2d 746. Depending upon the circumstances of any given case several factors may be considered, but only two factors need be discussed here as they are dispositive of the issue.

(1) Under whose control and direction was the unloading conducted?

(2) For whose benefit was this operation undertaken?

As to the question of control and direction, there is a substantial dispute. Kehrwald Construction Company relies upon the uncontested fact that plaintiff chained the trusses for unloading and directed the cutting of the bands, for its position that plaintiff was directing the unloading. At one point in his deposition plaintiff stated he directed the unloading. However, other statements by plaintiff in his deposition and others present during the unloading, tend to point to a different conclusion. Plaintiff testified he was not instructed by Brenna Truss Company to see to the unloading. Only when such specific instructions were given by Brenna was it customary for him to undertake such

- 4 -

an operation. In fact, it was Melford Kehrwald who solicited both manpower and equipment for the unloading. Additionally, Melford Kehrwald professed ignorance as to the method of unloading and asserted this was the reason plaintiff directed the operation. Yet under questioning Melford Kehrwald admitted he had unloaded trusses before. After Storrusten was injured, Melford Kehrwald and the other men did not seem to have any great difficulty in unloading the remaining trusses. Finally, Melford Kehrwald admitted directing the actual truss unloading from the truck. In view of these facts it becomes an open question whether plaintiff was the person in charge of the unloading operation.

In summary of the direction-control factor under the loaned servant doctrine, we believe the statement of the United States Supreme Court in the landmark loaned servant case Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct.252, 53 L ed 480, 485, is apropos to the circumstances here:

> "Much stress is laid upon the fact that the
> winchman obeyed the signals of the gangman, who
> represented the master stevedore, in timing the
> raising and lowering of the cases of oil. But
> when one large general work is undertaken by
> different persons, doing distinct parts of the
> same undertaking, there must be co-operation
> and co-ordination, or there will be chaos. The
> giving of the signals under the circumstances of
> this case was not the giving of orders, but of
> information; and the obedience to those signals
> showed co-operation rather than subordination,
> and is not enough to show there has been a change
> of masters."

As to the question of benefit from work done, this Court has had occasion to consider it as a factor in loaned servant litigation in the past. Lewis v. Potter, 149 Mont. 430, 427 P.2d 306; Western Foundry, Inc. v. Matelich, 150 Mont. 228, 433 P.2d 789. We again find it an important factor in the instant case.

Plaintiff contends that all unloading work undertaken after the delivery of the trusses to the Harrison ranch accrued to the benefit of defendants not plaintiff, thus making the loaned servant

- 5 -

doctrine inapplicable. From our examination of the record considerable dispute exists as to the benefit question, so as to render summary judgment in favor of Kehrwald Construction Company inappropriate. First, the invoice, a delivery order type of bill of lading, entered into evidence as Exhibit No. 1, was signed by Melford Kehrwald when plaintiff arrived at the ranch and before the unloading began. The bill of lading contained no unloading instructions. There was, in fact, nothing on it which restricted transfer of ownership of the trusses at the time of delivery.

Section 87A-1-201, R.C.M. 1947, defines a bill of lading as:

> "(6) * * * a document evidencing the receipt of goods for shipment issued by a person engaged in the business of transporting or forwarding goods * * *."

Section 87A-1-201, R.C.M. 1947, defines a document of title as:

> "(15) * * * bill of lading * * * or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass."

Section 87A-2-401, R.C.M. 1947, in pertinent part provides:

> "(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods * * *
>
> "(a) * * *
>
> "(b) if the contract requires delivery at destination, title passes on tender there."

Since it is not urged by Kehrwald Construction Company that Brenna had an obligation to unload the trusses and it is explicitly denied by plaintiff there can be no question that the

- 6 -

tender of the trusses and Melford Kehrwald's signing of the bill of lading terminated any responsibility that Brenna Truss or plaintiff had for the goods.

Substantial issues of material fact were raised as to control of the unloading and for whose benefit it was done, therefore summary judgment for Kehrwald Construction Company under the loaned servant doctrine is inappropriate.

In regard to the summary judgment in favor of defendant Harrison, plaintiff contends Harrison retained such control over the unloading operation to render him subject to liability. We find no merit in this contention.

Plaintiff alleges such control by Harrison indicates a joint enterprise relationship with Kehrwald Construction Company. Prosser Torts 4th Ed. 475 defines a joint enterprise to be:

> " * * * something like a partnership, for a more limited period of time, and a more limited purpose. It is an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest." (Emphasis supplied.)

See: Sumner v. Amacher, 150 Mont. 544, 437 P.2d 630; Rae v. Cameron, 112 Mont. 159, 114 P.2d 1060.

Whether Harrison and Kehrwald Construction Company were joint venturers so as to render Harrison liable for the acts of Kehrwald Construction Company's employee, Charles Kehrwald, must be determined from the contract executed by defendants and the circumstances surrounding the unloading. The contract, produced in evidence, specifically designates Melford Kehrwald as "contractor" and Harrison as "contractee" and clearly states there are no covenants, promises, or agreements, written or oral, except as set forth in the writing; no mention is made of a joint enter-

prise relationship. The depositions of all participants disclose no facts tending to show control by Harrison over the unloading operation; rather the depositions place Harrison several feet distant from the truck during the unloading and aiding only in the stacking of the trusses.

In view of these facts, this Court's holding in Greening v. Gazette Printing Co., 108 Mont. 158, 165, 166, 88 P.2d 862, is directly in point. In Greening this Court was asked to determine the relationship between two contracting parties in an effort to determine possible liability for injuries to a third person. The Court said:

> "As between the parties, the written contract is controlling as to the relationship, and ordinarily neither party may vary it by parol testimony; but as to third parties, this is not the case. Whatever obligations the relation might impose on either as respects third parties could not depend upon the nature of the stipulations, but must spring from the relation itself. * * *

> " * * * There was no testimony to show that any control over Stewart, other than that provided for in the contract, was exercised by the respondent, and particularly there is no showing of any such exercise of control on the day of the injury complained of. Had such a showing been made, the question of the relationship at the time of the injury should properly have been submitted to the jury; but since no such showing was made, the relationship must be determined by the contract itself."

Similarly, in the instant case, no testimony in deposition indicates in any way that Harrison had an "equal" input into the unloading operation, to qualify the undertaking as a joint enterprise. Thus, as in Greening, we are left with the terms of the contract in determining a possible basis for Harrison's liability. Since the contract explicitly provides for a contractor-contractee relationship, with no mention of a joint enterprise, we find no material issue of fact as to Harrison's liability under a joint enterprise theory.

Finally plaintiff, apparently pleading in the alternative

argues that an employer-independent contractor relationship may have existed between the defendants but that the facts tend to show Harrison retained such control over the work to be liable for the accident. The general rule is that the employer of an independent contractor is not liable for the negligence of the contractor or his employees. 57 C.J.S. Master and Servant §584. So the question becomes--did Harrison retain such control as to trigger an exception to the independent contractor rule? Relying on the same source utilized by plaintiff, 2 Restatement of Torts 2d §414, Comment (c) p. 388, states:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

Upon the record in this case, the exception cited by plaintiff is inapplicable because there is no factual ground to support a finding of any retention of specific control by Harrison. The mere fact he assisted in the stacking of the trusses is insufficient to establish the degree of control contemplated by the exception.

We affirm the summary judgment in favor of Robert Harrison. We reverse the summary judgment as to Kehrwald Construction Company.

_____
                    Justice

- 9 -

_Wesley Castles_

_John Conway Harrison_

_Frank I. Haswell_

Justices

_Bernard W. Thomas_

Hon. Bernard Thomas, District
Judge, sitting in place of Mr.
Chief Justice James T. Harrison.