No. 05-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 8N

SEAN ELLINGTON,

Plaintiff and Appellant,

v.

ROCKY MOUNTAIN HOMESTEAD, INC.,

Defendant, Respondent
and Cross-Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause CDV-01-327,
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Bernard J. "Ben" Everett and Wade J. Dahood, Knight, Dahood,
Everett & Sievers, Anaconda, Montana

For Respondent:

William J. Gregoire and Stephanie A. Hollar, Smith, Walsh,
Clarke & Gregoire, Great Falls, Montana

Submitted on Briefs:  August 23, 2006

Decided:  January 17, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal

Operating Rules, the following decision shall not be cited as precedent.  It shall be filed

as a public document with the Clerk of the Supreme Court and shall be reported by case

title, Supreme Court cause number and result in this Court's quarterly list of noncitable

cases published in the Pacific Reporter and Montana Reports.

¶2      Sean Ellington (Ellington) appeals from the order of the Eighth Judicial District

Court, Cascade County, denying his motion for judgment notwithstanding the verdict and

motion for a new trial, and the order granting Rocky Mountain Homestead, Inc.'s (RMH)

motion for summary judgment.

¶3      We restate the issues on appeal as follows:

¶4      (1)  Did the District Court err in denying Ellington's motion for judgment

notwithstanding the verdict and motion for new trial?

¶5      (2)  Did the District Court err in granting summary judgment to RMH on

Ellington's loaned servant claim?

¶6      (3)  Is Ellington's claim of "vicarious liability" reviewable on appeal?

### BACKGROUND

¶7      Dale and Tracy Yurek (the Yureks) built a home in Ulm, Montana, in 1998.  They

hired RMH to frame the house, build the roof, and perform all of the interior finish

carpentry.   In order to roof the house, RMH ordered shingles and tarpaper from Johnson-

Madison Lumber Company (Johnson-Madison), a local supplier of building materials.

2

RMH placed its order on December 8, 1998. Two Johnson-Madison employees, Ellington and Tyler Klemencic (Klemencic), arrived at the construction site with the roofing materials at approximately 4:00 p.m. that same day. Ellington worked for Johnson-Madison as a delivery driver. As part of his duties, he would take supplies from the lumber yard and deliver them to construction sites.

¶8 David Mitchell (Mitchell), the president of RMH, directed Ellington and Klemencic to unload the wafer board first, so that RMH could finish sheeting the roof. The materials were loaded on a scissor-lift delivery truck owned by Johnson-Madison. Ellington and Klemencic unloaded the wafer board by raising the lift on the back of their truck to the level of the roof and handing the wafer board to the RMH employees. Once the wafer board was unloaded, RMH's employees worked to finish the sheeting of the roof. After the wafer board was unloaded, Mitchell walked Ellington across the roof and instructed him where to place the shingles.

¶9 Mitchell and the other RMH employees left at approximately 4:30 p.m. Ellington and Klemencic remained on the job site and continued unloading shingles. As Ellington was carrying a packet of shingles onto the apex of the roof, he slipped and fell from the roof, injuring his ankles. The roof was approximately eight feet, six inches high.

¶10 Ellington sued the Yureks and RMH; however, the Yureks were released from the litigation, leaving only RMH. Ellington alleged three counts in his complaint: (1) that RMH was strictly liable for his fall as occurring while he was engaged in an "abnormally dangerous" activity under and for RMH's violation of applicable OSHA regulations

3

requiring fall protection; (2) that RMH knew or should have known that delivering the shingles to the roof carried a peculiar risk of harm unless special precautions were taken, according to the requirements of *Beckman v. Butte-Silver Bow County*, 2000 MT 112, 299 Mont. 389, 1 P.3d 348; and (3) RMH exercised control over Ellington's work at the home site and that RMH is, therefore, responsible for any negligence on its part causing Ellington's injuries, again pursuant to *Beckman*.

¶11    RMH moved for summary judgment, arguing the *Beckman* case did not apply because RMH was not the owner or general contractor and because Ellington was a materialman delivering construction materials to the project for his employer, Johnson-Madison, and was not a subcontractor.  RMH also argued that it was entitled to summary judgment because OSHA applies only in cases of an employer-employee relationship.

¶12    In their summary judgment arguments, both parties argued the application of *Beckman* to this case.  In *Beckman*, we restated the general rule that a general contractor or project owner is not liable for injuries incurred by employees of subcontractors or independent contractors, but acknowledged three exceptions to this general rule: (1) where there is a non-delegable duty based on a contract; (2) where the subcontractor is engaging in an inherently or intrinsically dangerous activity; and (3) where the general contractor has negligently exercised control over the subcontractor's work. *Beckman*, ¶ 12.

¶13    The District Court concluded the *Beckman* case did not apply because there was no general contractor/subcontractor relationship between RMH and Johnson-Madison.

4

The court found Johnson-Madison merely sold and delivered materials used on the project. The court granted summary judgment with regard to Ellington's claims based upon strict liability under Count I, concluding that delivering shingles on a roof was not an abnormally dangerous activity. The court further held that OSHA regulations requiring fall arrest systems did not apply because there was no employer-employee relationship between RMH and Ellington. However, although concluding that *Beckman* did not apply, the court ruled that Ellington could nonetheless proceed on Counts II and III under general negligence theories and denied RMH's motion for summary judgment on those counts.

¶14     Ellington then amended his complaint to plead he was the loaned servant of RMH. RMH again moved for summary judgment, arguing the loaned servant doctrine did not apply. The court granted this motion, concluding that Ellington was not a loaned servant of RMH. In January 2005, Ellington filed a motion to amend or correct, requesting the court to reverse its prior order and allow him to introduce evidence of OSHA regulations at trial. RMH opposed the motion. The District Court granted Ellington's motion and held that he could introduce the OSHA regulations as evidence of negligence. RMH cross-appeals this issue, but our resolution of the appeal makes it unnecessary for us to reach the merits of the cross-appeal.

¶15     The jury trial began on May 23, 2005, and on May 25, 2005, the jury returned a verdict that RMH was negligent, but that its negligence did not cause Ellington's

injuries.[1] Ellington filed a motion for judgment notwithstanding the verdict or for a new trial, alleging that the jury's verdict was inconsistent as no other explanation for the cause of Ellington's injuries was alleged or proven at trial. The court denied the motion, concluding that the evidence supported the verdict and that there was nothing internally inconsistent in the jury's verdict. Ellington appeals.

## STANDARD OF REVIEW

¶16 "Our standard of review of the denial of a motion for new trial is whether the district court manifestly abused its discretion." *Bailey v. Beartooth Communications, Co.*, 2004 MT 128, ¶ 10, 321 Mont. 305, ¶ 10, 92 P.3d 1, ¶ 10 (citation omitted). "An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *Bailey*, ¶ 10.

¶17 We review a district court's grant of summary judgment *de novo*. *Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, ¶ 13, 309 Mont. 358, ¶ 13, 47 P.3d 432, ¶ 13. Upon appeal or review of a district court's grant of summary judgment, this Court applies the same evaluation as the district court. *Bruner v. Yellowstone County*, 272 Mont. 261,

---

[1] The Special Verdict Form contained the following:
1. Was defendant ROCKY MOUNTAIN HOMESTEAD negligent? Yes __x____ No _____
   If your answer is "Yes", please go to question No. 2. If your answer is "No", please have the foreperson sign the verdict form and notify the bailiff.
2. Was defendant ROCKY MOUNTAIN HOMESTEAD'S negligence a cause of injury to plaintiff SEAN ELLINGTON? Yes _____ No ___x___
   If your answer is "Yes", please go to question No. 3. If your answer is "No", please have the foreperson sign the verdict and notify the bailiff.

264, 900 P.2d 901, 903 (1995). This Court has consistently held that the party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Bruner*, 272 Mont. at 264, 900 P.2d at 903. Once this is accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of fact does exist. *Bruner*, 272 Mont. at 264, 900 P.2d at 903.

## DISCUSSION

### Issue One

¶18 **Did the District Court err in denying Ellington's motion for judgment notwithstanding the verdict and motion for new trial?**

¶19 Ellington argues that the jury's finding that RMH was negligent is inconsistent with their finding that RMH's negligence did not cause Ellington's injuries. Ellington contends that in order to find that RMH was negligent, as the jury did, the jury had to determine that RMH's actions caused the injury to Ellington. Ellington contends that due to the inconsistent verdict, he is entitled to a new trial.

¶20 RMH argues that the District Court properly denied Ellington's motion for judgment notwithstanding the verdict and motion for new trial. RMH contends that the jury's finding that RMH's negligence did not cause Ellington's injuries is supported by the evidence, and that the verdict is not inconsistent with the evidence. RMH points to evidence that ice had formed as a result of water which had dripped from the shingles onto the roof when being delivered, and asserts that RMH had nothing to do with either the formation of ice or Ellington slipping thereon. Thus, RMH contends that the jury

7

could find RMH was negligent, but that its negligence was not the cause of Ellington's injuries.

¶21    A negligence action requires proof of four elements: (1) existence of a duty; (2) breach of the duty; (3) causation; and (4) damages. *White v. Murdock*, 265 Mont. 386, 389, 877 P.2d 474, 476 (1994). The causation element requires proof of both cause in fact and proximate cause. *White*, 265 Mont. at 390, 877 P.2d at 476.

¶22    At trial, Mitchell testified that he did not install a slide guard around the perimeter of the roof. According to Ellington's expert witness, this was a violation of OSHA. RMH contends the cause of the accident was ice on the roof which formed after water dripped off the shingles that Ellington and Klemencic brought onto the roof. Ellington's contention that the only reasonable conclusion is that RMH's negligence was the cause of his injuries is thus incorrect. The jury could have found that RMH was negligent for violating OSHA requirements, but that the injuries were not caused by this negligence, rather, that they were caused by the ice formed from delivery of the shingles. As the District Court stated:

> There is nothing internally inconsistent in the jury's verdict in this case. The Court cannot look into the minds of the jurors and speculate about their deliberations. Sufficient to say that the evidence would support the conclusion that there was negligence on the part of the Defendant but that that negligence was not the cause of Plaintiff's fall from the roof and injuries.

Thus, we conclude that the District Court did not abuse its discretion in denying Ellington's motion for judgment notwithstanding the verdict and request for new trial.

8

**Issue Two**

¶23 **Did the District Court err in granting summary judgment to RMH on Ellington's loaned servant claim?**

¶24 Ellington argues that he became the borrowed or loaned servant of RMH when Mitchell directed him to place the shingles at the apex of the roof, and thus an employer/employee relationship existed. Ellington contends that RMH had control over the work site while the roof was constructed, and that the shingles were delivered to the roof for the benefit of RMH under unsafe conditions.

¶25 RMH argues that the District Court correctly determined as a matter of law that Ellington was not the loaned servant of RMH. RMH contends that Ellington was paid by Johnson-Madison, and that RMH did not have the ability to hire or fire him. RMH argues that Ellington was merely performing his own job at the time of his accident, and thus, was not working for RMH or under its control. In RMH's view, Ellington was a materialman who was simply making a delivery to a job site, and was not on loan to RMH.

¶26 Ellington replies that he became the loaned servant of RMH when Mitchell directed him to place the shingles at the apex of the roof, which differed from his usual delivery routine. Ellington argues that *Devaney v. Lawler Corporation*, 101 Mont. 579, 56 P.2d 746 (1936), is controlling on this point, and that the pertinent factor is which master has the authority to control or direct the manner and the method of the work to be

9

done. Ellington contends that since he usually placed the shingles at the edge of the roof, delivering them to the apex of the roof made him the loaned servant of RMH.

¶27   Generally, an employer who temporarily borrows and exercises control over another's employee assumes liability in respondeat superior for the activities of the borrowed employee. *Storrusten v. Harrison*, 169 Mont. 525, 529, 549 P.2d 464 (1976). In *Storrusten*, the issue was whether an employee of the defendant contractor who was injured on the job became a loaned servant of the lumber company who was making a delivery, or whether the employee was acting as an employee for the defendant. We explained that, when the loaned servant doctrine becomes an issue, the ultimate question becomes: in whose business was the servant engaged? *Storrusten*, 169 Mont. at 529, 549 P.2d at 466. Two factors to be considered are: (1) under whose control and direction was the work conducted; and (2) for whose benefit was this operation undertaken? *Storrusten*, 169 Mont. at 529, 549 P.2d at 466.  In order for an employee to be considered "loaned" one must look at whether the party to whom the employee is loaned has the power of controlling and directing the employee. *Devaney*, 101 Mont. at 588, 56 P.2d at 749. "[T]his power of control or direction must be as proprietor, in the sense of being able to stop the work or continue it, and to determine the way in which the work shall be done, with reference to the method of reaching the result, and not merely the result to be reached." *Devaney*, 101 Mont. at 588, 56 P.2d at 749.

¶28   Here, Ellington was employed by Johnson-Madison; Johnson-Madison hired him and paid him, and RMH did not have the ability to fire him. Ellington testified that it was

10

his job to deliver lumber and other materials to contractors. It is undisputed that Ellington was delivering and unloading the shingles in the course and scope of his employment. RMH did not "hire" Johnson-Madison to do anything; RMH only purchased shingles, tar paper, and other roofing materials from Johnson-Madison, which Johnson-Madison delivered to the job site, in the ordinary course of its business. Ellington was equipped by his employer with a scissor-lift delivery truck for the purpose of delivering materials to the roofs of construction projects, thus going up to the roof was within the scope of his usual duties. Klemencic testified that shingles are generally delivered to the roof. Joel Brueland, Ellington and Klemencic's boss, testified that his employees are responsible for unloading the shingles, and that 99 percent of the time this will be on the roof. The District Court reasoned that:

> [E]very aspect of how [Ellington] carried out the unloading of shingles was part of his job and the responsibility of Johnson-Madison. There may have been some details of placement of the shingles where [Ellington] followed the requests of [RMH]. This does not equate, however, to being under the control of [RMH].

¶29 We conclude that the District Court was correct in holding that there was no genuine issue of material fact that Ellington was not the loaned servant of RMH, and in entering summary judgment in favor of RMH.

### Issue Three

¶30 **Is Ellington's claim of "vicarious liability" reviewable on appeal?**

¶31 Ellington argues that the District Court erred in "dismissing [his] theory of vicarious liability" where he was exposed to the risk of falling off the roof when RMH

11

directed him to deliver the shingles to the apex of the roof, knowing the manner in which he would have to deliver the shingles was unsafe. Ellington contends that RMH is "vicariously liable" for his injuries because of RMH's failure to take precautions to reduce the unreasonable risks associated with engaging in an inherently dangerous activity.

¶32 RMH argues that the District Court correctly ruled that *Beckman* does not apply to these facts. RMH maintains that Ellington was not RMH's employee, and further, he was not even the employee of a subcontractor—he was the employee of a materialman. Thus, RMH contends that the duties discussed in *Beckman* do not apply to Ellington as an employee of a materialman. RMH also contends that delivering shingles to the top of a roof is not an inherently dangerous activity.

¶33 We first must clarify the pre-trial orders entered by the District Court. The court granted RMH's motion for summary judgment with regard to Ellington's strict liability and loaned servant claims. RMH had also moved for summary judgment on Ellington's second count—that RMH knew or should have known that delivering the shingles to the roof carried a peculiar risk of harm unless special precautions were taken, based on *Beckman*'s second exception (*see* ¶ 12)—and the court denied this part of the motion, holding that "there are a number of questions for the jury to decide about RMH's knowledge and actions as well as Ellington's actions and potential negligence." RMH further moved for summary judgment on Ellington's third count—that RMH exercised control over Ellington's work at the home site and that RMH is, therefore, responsible for

12

any negligence on its part that injured Ellington, based on *Beckman*'s third exception—which the District Court also denied, holding that "there are questions of fact concerning the amount of control actually exerted over Ellington by RMH's agents. As such, this issue must be left to the jury to decide." In its order, the District Court held that the *Beckman* duties did not apply because there was no general contractor/subcontractor relationship between RMH and Ellington, but nonetheless denied summary judgment on these counts, concluding that "the issue, without the *Beckman* overlay, becomes one of common negligence" for which genuine issues of material fact remained.

¶34 On appeal, Ellington does not argue that the District Court erred by determining that *Beckman* does not apply. Rather, he argues that the court erred by ruling that an employer/employee relationship did not exist under the loaned servant doctrine, *see infra*, and also that in general, roofing was not an inherently dangerous activity. This latter question is a part of the analysis under *Beckman*'s second exception, but does not go to the District Court's primary holding—that *Beckman* does not apply to, and therefore does not establish duties for, the relationship between RMH and Ellington. *Beckman* imposed "vicarious liability" on owners or contractors for the torts of someone else, namely, subcontractors. *Beckman*, ¶ 15. Ellington's argument fails to establish for whose torts RMH can be held vicariously liable, and does not demonstrate error on the part of the District Court on this core issue. An appellant carries the burden of establishing error by the trial court, *Rieman v. Anderson*, 282 Mont. 139, 935 P.2d 1122 (1997), and must cite to authority which supports the position being advanced on appeal. M. R. App. P. 23.

13

While RMH argues that *Beckman* does not apply, it was Ellington's burden as the appellant to demonstrate that the District Court erred by dismissing claims based on *Beckman*. Ellington's direct negligence claims against RMH were allowed to go to the jury, and we have no basis to conclude it was error for the District Court to enter summary judgment on other claims.

¶35   Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

14